689 A.2d 302

**Sandy L. SWARTZ, Appellant,**

v.

**Frank R. SWARTZ, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 11, 1996.

Filed Feb. 6, 1997.

17

Taylor P. Andrews, Carlisle, for appellant.

R. Scott Cramer, Duncannon, for appellee.

Before HUDOCK, SAYLOR and HOFFMAN, JJ.

HUDOCK, Judge:

This is an appeal from the order of the trial court granting Appellee's motion for judgment on the pleadings after a non-jury trial. We reverse and remand with instructions.

The facts may be summarized as follows: In 1989 Appellant (Wife) and Appellee (Husband) had a child out-of-wedlock. The couple then purchased a home in Wife's name. After Husband's divorce to his first wife was finalized, he and Wife married in 1991. Shortly thereafter, the parties borrowed against their home for the purpose of building an addition thereon. In 1993, the couple refinanced their debt, including their existing mortgage. In order to secure the refinancing, Wife's father had to co-sign the note and pledge his house as collateral. Approximately five months after the refinancing,

Husband told Wife that he was having an affair and that he wanted out of the marriage. Husband then left the marital residence and began co-habitating with another woman.

Husband and Wife went to see an attorney to discuss their separation. The parties indicated their desire to provide a home for their daughter without forcing Wife's father to become responsible for the mortgage. Therefore, the attorney drafted a Separation and Child Support Agreement (Agreement). The Agreement provided in pertinent part:

5. SUPPORT OF [DAUGHTER]. Husband agrees that he shall pay, as and for support of [daughter], and for no other purpose, the mortgage payment on the aforementioned real estate, and one-half of the homeowner's insurance (which includes fire insurance). Wife shall pay the utilities, taxes and other expenses of maintenance. This sum is intended to be in lieu of a cash child support payment. Husband shall be obliged to pay this amount only until [daughter] graduates from high school or until the mortgage is paid off, whichever occurs first. This is not a limitation on his child support obligation.

* * *

10. BREACH. If either party breaches any provision of this Agreement, the other party shall have the right, at his or her election, to sue for damages or any other relief that may be available to him or her for such breach, and the party breaching this Agreement shall be responsible for payment of legal fees and costs incurred by the other in enforcing his or her rights under this Agreement.

Both parties executed the Agreement and had it notarized. Thereafter, Husband made the monthly mortgage payments which were approximately $618.00. However, in November of 1994, Husband unilaterally decided that he would not pay the full mortgage amount. Instead, he paid Wife only $400.00 per month. Realizing that she could not keep the mortgage obligation current without Husband's assistance, Wife filed a complaint for child support in the court of common pleas. In March of 1995, an order was entered wherein Husband was

required to pay $65.00 per week for child support, $20.19 per week for child care, plus $10.00 toward arrearages. Following the court's intervention, Husband paid only the support ordered by the court, approximately one-half of the amount set forth in the Agreement. Husband continually refused Wife's request to make up the difference between the amount specified in the Agreement and the amount ordered by the court. Thus, Wife filed an equity action seeking specific performance of the Agreement. Wife also sought counsel fees pursuant to paragraph ten of the Agreement.

Wife's complaint in equity was filed in March of 1995. Husband filed an answer, claiming that Wife was estopped from pursuing an equity action because she waived her right to enforce the Agreement when she filed a support action with the trial court. Wife filed a praecipe to place the equity action on the trial list and a pre-trial conference was held in October of 1995. The trial was scheduled for December 18, 1995. On December 12, 1995, Husband filed a motion for judgment on the pleadings. The court deferred its ruling on the motion and the case proceeded to trial as scheduled. On January 5, 1996, the trial court granted Husband's motion and dismissed Wife's complaint. The trial court, relying on *Knorr v. Knorr*, 527 Pa. 83, 588 A.2d 503 (1991), determined that Wife was precluded from bringing an equity action because she elected not to seek enforcement of the Agreement, and instead, filed a complaint for support in the court of common pleas.

Wife raises two issues on appeal: (1) whether she is barred from seeking specific performance of the Agreement because she elected to file a separate action for child support; and (2) whether Husband's motion for judgment on the pleadings was untimely. We will discuss Wife's issues in the order presented.

When reviewing the grant of judgment on the pleadings, we employ the following standard:

A motion for judgment on the pleadings should be granted only where the pleadings demonstrate that no genuine issue of fact exists, and the moving party is entitled to judgment

as a matter of law. Thus, "[i]n reviewing a trial court's decision to grant judgment on the pleadings, the scope of review of the appellate court is plenary; the reviewing court must determine if the action of the trial court was based on a clear error of law or whether there were facts disclosed by the the [sic] pleadings which should properly go to the jury." An appellate court must accept as true all well-pleaded facts of the party against whom the motion is made, while considering against him only those facts which he specifically admits.... Only when the moving party's case is clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings.

*American Motorists Insurance Company v. Farmers Bank and Trust Co. of Hanover*, 435 Pa.Super. 54, 58, 644 A.2d 1232, 1234 (1994) (*quoting Kelly v. Nationwide Insurance Company*, 414 Pa.Super. 6, 9–10, 606 A.2d 470, 471–72 (1992) (citations omitted)). Cognizant of this standard, we review Wife's first claim.

 Wife contends that the lower court erred in dismissing her complaint on the ground that she waived her contractual rights pursuant to the Agreement by filing a complaint for support independent of the Agreement. In doing so, the trial court relied on our Supreme Court's decision in *Knorr, supra.* In *Knorr,* the parties to a divorce entered into a private support agreement wherein husband was required to pay $200.00 per month. A final decree of divorce was subsequently issued and the support agreement was incorporated, but not merged, into the decree. Thereafter, husband defaulted on his support obligation and wife filed a complaint for support in the court of common pleas. The court issued a support order in the amount of $200.00 per month, subjecting husband to its contempt and attachment powers. Wife subsequently petitioned for an increase in support, while husband petitioned for a reduction, both claiming change of circumstance. Prior to the hearing, wife filed a motion to vacate husband's petition for a reduction on the ground that the support order was not subject to modification because of the existence of the parties'

separate support agreement. The trial court agreed, finding that the court's order could not be modified due to the existing agreement. We reversed and the Supreme Court affirmed our decision, concluding that the parties' private agreement could not be enforced or considered in a separate support action. However, the *Knorr* Court noted that to enforce the private agreement, wife would have to sue in contract under the theory of specific performance. *Knorr*, 588 A.2d at 505 n. 1.

We have interpreted *Knorr* many times since it was decided. In *Hanson v. Hanson*, 425 Pa.Super. 508, 625 A.2d 1212 (1993), we applied *Knorr* for the proposition that where parents invoke the jurisdiction of the family court to seek determinations of child support, the court is not bound by the terms of the parties' private support agreements. *Hanson*, 625 A.2d at 1213. While this is true, the trial court failed to make a critical distinction between the facts of *Knorr* and the facts at bar. Unlike the party in *Knorr*, Wife did not attempt to enforce the terms of the private Agreement in the civil action for support. Instead, she filed a separate action in equity. As we noted in *Ashbaugh v. Ashbaugh*, 426 Pa.Super. 589, 627 A.2d 1210 (1993), the *Knorr* Court never addressed the question of whether a party's conduct in filing a support complaint in one action would preclude that party from seeking to enforce the contract in future disputes. *Ashbaugh*, 627 A.2d at 1215 n. 5.

While the *Knorr* Court may not have specifically addressed the present issue, our Supreme Court has addressed similar issues regarding the enforceability of private agreements in conjunction with existing court-determined support orders. In *Brown v. Hall*, 495 Pa. 635, 435 A.2d 859 (1981), the Court held that an equity court has jurisdiction to enforce a private support agreement notwithstanding the existence of a separate court order reducing the party's child support obligation. *Brown*, 435 A.2d at 861. The Supreme Court opined that a result to the contrary would serve to illegitimize future separation agreements and encourage a party to promise anything to obtain a divorce, knowing he or she would never be bound

by the terms of the promise. *Id.* at 863. The Court also noted that such a result would shake the foundations of contract law and the sanctity of a bargain made between two parties at arms length. *Id.* Further echoing *Brown's* conclusion is an abundance of precedent in Pennsylvania establishing the proposition that private support agreements and court-determined support orders may exist simultaneously, stand apart and be enforced separately. *See Soll v. Soll,* 429 Pa.Super. 312, , 632 A.2d 581, 584 (1993) (it is possible for support agreements and court orders to coexist, stand apart, and be enforced separately); *Lipschutz v. Lipschutz,* 391 Pa.Super. 537, , 571 A.2d 1046, 1052, *alloc. den.,* 527 Pa. 601, 589 A.2d 692 (1990) (wife who obtained support order was not estopped from enforcing prior private settlement agreement regarding support); *Andursky v. Andursky,* 382 Pa.Super. 1, 3–4, 554 A.2d 571, 573 (1989) (private agreements for support are governed by the law of contract and are enforceable in an action in assumpsit or equity by specific performance; private agreements and court-imposed orders are enforceable in distinct fashions and governed by distinguishing principles); *Trumpp v. Trumpp,* 351 Pa.Super. 205, 209, 505 A.2d 601, 604 (1985) (wife can pursue equitable remedy of specific enforcement of the parties' private agreement even if intervening support order had been obtained in court); *Guerin v. Guerin,* 296 Pa.Super. 400, 402, 442 A.2d 1112, 1113 (1982) (order of domestic relations judge reducing support obligation is not *res judicata* of issue of enforceability of private support agreement when private agreement has not been entered as a court order).

■ In light of the above, we conclude that the existence of a court-imposed order of support does not vitiate a private agreement for support that has not been merged into a decree of divorce, nor does it impede either parties' ability to enforce the terms of the agreement in an action in assumpsit or equity. Accordingly, we conclude that the trial court erred in failing to recognize the factual distinction between the present case and *Knorr,* in addition to failing to recognize that court orders for support and private agreements that are indepen-

dent of, or survive a divorce decree, are not mutually exclusive.

Because our resolution of Wife's first issue results in reversing the court's order granting judgment on the pleadings, we need not reach the merits of Wife's second issue.

Order reversed. Case remanded for equitable proceedings on Wife's complaint for specific performance and counsel fees. Jurisdiction relinquished.