**Mary A. GASTER**

v.

**Edwin S. GASTER, Appellant.**

Superior Court of Pennsylvania.

Argued March 4, 1997.

Filed Nov. 25, 1997.

Anthony T. McBeth, Harrisburg, for appellant.

Judith A. Calkin, Harrisburg, for appellee.

---

Before CIRILLO, President Judge Emeritus, and POPOVICH and HESTER, JJ.

CIRILLO, President Judge Emeritus:

Appellant Edwin S. Gaster (Father) appeals from an order of the Court of Common Pleas of Dauphin County requiring him to pay college support for the parties' oldest daughter, Cybil.

On August 4, 1992, Edwin and Mary Gaster (Mother) were divorced. One month prior to the divorce, the Gasters had entered into a separation and property settlement agreement. That agreement was incorporated, but not merged, into the divorce decree. The agreement provides in relevant part:

> Should any of the children seek higher education beyond the high school level, [Father] agrees to assist payment [sic] of such higher educational expenses. Both parties shall contribute to the children's college expenses considering their respective financial abilities and the aptitude of the children.

> The parties shall confer with each other with regard to the nature and extent of the formal education of the children. Both parties shall be involved with their children in choosing a college/university or trade school.

Property Settlement Agreement, ¶ 12.

Father failed to contribute to college support for Cybil. Mother filed a petition for contempt. Father filed a counter-petition for contempt, alleging that Mother, too, had violated the agreement by excluding him from participating in Cybil's college choice.

The court held a hearing on the contempt petitions. After the hearing, the court entered the following order:

1. Edwin S. Gaster is obligated to pay child support for Cybil in the amount of $5,370.00 per year for the 1995–96 college year, payable on or before June 1, 1996.

2. Edwin S. Gaster is obligated to pay child support for Cybil for the 1996–97 college year in the amount of $5,351.92 in monthly installments of $446.00, commencing July 1, 1996.

Father appealed to this court, and presents three issues for our review:

1. Should a father be compelled to contribute to the college expenses of his daughter, purportedly pursuant to a provision in a post-marital agreement, when that provision has absolutely no scheme to calculate the obligation, and the daughter consistently treated the father with disdain and disrespect for at least three years prior to her entry into college (regardless of whether the daughter's shameful conduct rose to the level of "estrangement"), when the daughter and her mother completely excluded the father from meaningful participation in the daughter's choice of a college, in violation of the same provision that the mother and daughter seek to enforce, when the provision at issue is now clearly against the public policy of Pennsylvania after the Supreme Court's decision in *Curtis v. Kline*, and when the daughter has chosen an out-of-state university with exorbitant tuition, while Penn State University offers the same major and through which the daughter can get a 75% discount on tuition because the mother is an employee of Penn State University?

2. Even if the provision described above is enforceable, did the trial court correctly calculate the father's income, when the trial court chose to ignore a Schedule C business loss, and all of the father's 1994 federal income tax return (the most recent return available at the time of the hearing), except for the father's salary as an employee of the United States Postal Service?

3. Even if the provision at issue is enforceable, and even if the income was calculated correctly, does there exist in this record sufficient valid basis for any order at all, when the trial court improperly relied upon hearsay testimony and speculation to determine purported college costs, when the trial court allowed evidence of the daughter's progress at college, which is irrelevant under Pennsylvania law, when the trial court did not allow the father to testify about an open court statement that the daughter had made regarding the father's religion (a critical piece of evidence

in showing the estrangement or strained relations between the father and daughter), when the trial court allowed irrelevant evidence of the father's "opinion" of Penn State and of college in general, when the trial court questioned the father directly, pressuring him into a "conference" with the daughter, then followed up by asking the father what his "offer" was, when the trial court accepted evidence of the daughter's living conditions (an irrelevant consideration under Pennsylvania law) and when the trial court allowed the daughter to testify about the feasibility of credits transferring from the expensive college that she has chosen, which evidence was both irrelevant and was clearly hearsay and speculation?

We do not reach these issues because we find it necessary to quash this appeal.

In *Sonder v. Sonder*, 378 Pa.Super. 474, 549 A.2d 155, (1988) (en banc), this court explained the distinction between a court order entered pursuant to statute and agreements entered into between parties (typically known as property settlement agreements or separation agreements) and the enforcement measures available under each:

> A support or alimony order is a creature of statute and an incident of the marriage which is enforceable by operation of law. . . . Proceedings relative to such orders contain due process requirements, evidentiary findings and involve scrutiny by the court as to their validity, subject to appellate review. In return for this closely proscribed [sic] legal proceeding with its attendant safeguards and judicial findings, the legislature has extended the powers to bring about compliance by granting courts the right to attach property and wages and to incarcerate willfully delinquent obligors. . . . Were we to make the enforcement of support agreements equivalent to the enforcement of support or alimony orders, then the full panoply of enforcement means would become available, including jailing for contempt. Thus, a person could be jailed on an obligation which never passed the due process accorded to court orders and is not subject to constant review for modification for change of circumstances or ability to pay.

*Id.* at 487–88, 549 A.2d at 162, *quoting Hollman v. Hollman*, 347 Pa.Super. 289, 299–300, 500 A.2d 837, 842–43 (1985), *rev'd and remanded on other grounds*, 515 Pa. 288, 528 A.2d 146 (1987).

The *Sonder* court emphasized that "there has never been any intent to foster an interpretation of the law whereby contracts and statutory provisions may be applied interchangeably or the non-modifiability of contract be engrafted on a support Order[.]" *Id.* at 489, 549 A.2d at 163. Rather, the court stated, "the contrary is quite evident." *Id.*, citing *Silvestri v. Slatowski*, 423 Pa. 498, 224 A.2d 212 (1966); *Colburn v. Colburn*, 279 Pa. 249, 123 A. 775 (1924); *Borrell v. Borrell*, 346 Pa.Super. 1, 498 A.2d 1339 (1985); *Millstein v. Millstein*, 311 Pa.Super. 495, 457 A.2d 1291 (1983); *Brown v. Hall*, 495 Pa. 635, 435 A.2d 859 (1981). *See also Bullock v. Bullock*, 432 Pa.Super. 643, 639 A.2d 826, 830 (1994) ("one must appreciate the substantial difference between a support obligation created by court order ... and support entitlements arising out of private contracts.").

In essence, if support is provided in an agreement between the parties, and the agreement is incorporated *but not merged* into the divorce decree, it survives the decree and is enforceable at law (in assumpsit) or equity (specific performance); the dispute is governed by the law of contracts. *Sonder*, 378 Pa.Super. at 487–89, 549 A.2d at 162. If an agreement is merged into the divorce decree, it "takes on all of the attributes of support orders for purposes of modification and enforcement." *Id.* at 512, 549 A.2d at 175. *See Jones v. Jones*, 438 Pa.Super. 26, 29, 651 A.2d 157, 158 (1994); *McMahon v. McMahon*, 417 Pa.Super. 592, 612 A.2d 1360 (1992) (en banc); *Flick v. Flick*, 408 Pa.Super. 110, 113, 596 A.2d 216, 218 (1991). Keeping these entities separate protects the parties and insures the orderly administration of justice. *Cf. Soll v. Soll*, 429 Pa.Super. 312, 632 A.2d 581 (1993) (it is possible for support agreements and support orders to exist simultaneously, stand apart, and be enforced separately).

■ The *Sonder* court noted, however, that agreements which provide for both property and support matters, or "hybrid" agreements, *see Sonder*, 378 Pa.Super. at 491 at n. 4, 549 A.2d at 164 n. 4, are subject to court intervention. The court stated that it is "inconceivable" that such agreements would be irreversible when the interest of justice and the best interests of the child require otherwise. *Id.* at 491–95, 549 A.2d at 164–65. "*[V]isitation and custody matters* will be enforced according to the best interests of the child *and as with support [o]rders, advisory effect will be given to the agreement but without binding effect on the court* when it is not in the best interests of the child." *Id.* at at 493, 549 A.2d at 165 (emphasis added). The courts are resolved that parties to a separation agreement cannot bargain away the rights of the children; the interests of the child will always be subject to the watchful eyes of the court. *See generally Knorr v. Knorr*, 527 Pa. 83, 588 A.2d 503 (1991); *Shirley v. Javan*, 454 Pa.Super. 131, 684 A.2d 1088 (1996); *Hyde v. Hyde*, 421 Pa.Super. 415, 618 A.2d 406 (1992); *Woodings v. Woodings*, 411 Pa.Super. 406, 601 A.2d 854 (1992); *Sonder, supra; Travitzky v. Travitzky*, 369 Pa.Super. 65, 534 A.2d 1081 (1987); *Miesen v. Frank*, 361 Pa.Super. 204, 522 A.2d 85 (1987); *Commonwealth ex rel. Shoemaker v. Coulson*, 335 Pa.Super. 626, 485 A.2d 70 (1984); *Oman v. Oman*, 333 Pa.Super. 356, 482 A.2d 606 (1984).

On February 12, 1988, the legislature amended the Divorce Code.[1] The following language was added:

### § 401.1 Effect of agreement between parties.

(a) A party to an agreement regarding matters within the jurisdiction of the court under this act, **whether or not the agreement has been merged or incorporated into the decree,** may utilize a remedy or sanction set forth in this act to enforce the agreement to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement.

23 P.S. § 401.1(a)(emphasis added).[2]

■ This addition to the Divorce Code was one of the more significant changes brought about by the 1988 Amendments. The enforcement provisions, as well as the remedies and sanctions available in the Divorce Code, are now available to parties to an agreement so long as the agreement pertains to matters within the court's jurisdiction under Part IV, the Divorce Code. *See* 23 Pa. C.S.A. §§ 3101; 3105(a). Thus, the amendments expressly permit parties to enforce agreements through the remedies available in the Divorce Code, which include the court's powers of contempt. *See* 23 Pa. C.S.A. § 3105(a); *see also* 23 Pa.C.S.A. § 3502(e)(9) ("If, . . . a party has failed to comply with an order of equitable distribution, as provided for in this chapter *or with the terms of an agreement* as entered into between the parties, after hearing, the court may, in addition to any other remedy available under this part, in order to effect compliance with its order: . . . find the party in contempt."); *Knorr v. Knorr*, 527 Pa. 83, 87 n. 1, 588 A.2d 503, 505 n. 1 (1991) (Cappy, J., concurring) ("I would also emphasize, as did the majority, that the distinction between merger and incorporation of an agreement

---

1. 1988, Feb. 12, P.L. 66, No. 13 § 2 (23 P.S. § 401.1). We note that the *Sonder* court did not apply the 1988 amendments to the agreement at issue in that case because the agreement had been executed prior to 1988. The parties in *Sonder*, therefore, were not bound by the 1988 amendments.

2. In 1990, the legislature again amended the Divorce Code, essentially reenacting it at 23 Pa. C.S.A. § 3101 *et seq.* The language from section 401.1(a) was slightly altered, as indicated below:

§ 3105. **Effect of agreement between parties**

(a) **Enforcement.** - A party to an agreement regarding matters within the jurisdiction of the court under this *part* [referring to Part IV-Divorce, which includes Chapter 31, Preliminary Provisions, Chapter 33, Dissolution of Marital Status, Chapter 35, Property Rights, and Chapter 37, Alimony and Support], **whether or not the agreement has been merged or incorporated into the decree,** may utilize a remedy or sanction set forth in this *part* to enforce the agreement to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement.

23 Pa.C.S.A. § 3105(a)(emphasis added).

into a divorce decree has been virtually eliminated by the recent enactment of Section 401.1 of the Divorce Code."); *Jackson v. Culp*, 400 Pa.Super. 519, 583 A.2d 1236, 1238 (1990) (in a dispute over marriage settlement agreement which was incorporated but not merged into divorce decree, court stated that "[t]he 1988 Amendment [§ 401.1(a) ] does not preclude a complaint in assumpsit; it merely facilitates enforcement of the [agreement] by providing an alternative enforcement vehicle in the form of [a] civil contempt complaint.").[3] The legislature did not extend section 3105(a) of the Divorce Code to Part V of the Domestic Relations Code, *see* 23 Pa.C.S.A. § 101, because parties' agreements pertaining to matters of child support or child custody *are always subject to court intervention.* The 1988 amendments to the Divorce Code, which enlarged the trial court's intervention and enforcement powers and blurred the distinction between merged and incorporated agreements, were never intended to supplant the well established rule that the courts may always intercede on behalf of the children. Regardless of the obliteration of the distinctions between merger and incorporation of parties' agreements since the *Sonder* decision, it remains the law that matters pertaining to child support are always subject to court supervision.

The Gasters' agreement is a "hybrid" agreement; it addresses both property and child support matters. Additionally, the agreement specifically rejects merger:

> The Decree of Divorce shall incorporate this marital Settlement Agreement, **but not merge** this Agreement into any Divorce Decree. It is specifically the intent of the parties hereto that this Agreement shall survive an action for divorce and decree of divorce and shall forever be binding and conclusive upon the parties. **It is intended that this Agreement be a contract separate and independent of the divorce decree but enforceable under** assumpsit **and equity principles as well as under the Divorce Code of 1980 and the Amendments thereto, the same being in addition to any remedies in law or equity and these enforcement rights are not waived or released by any of the provisions of this Agreement.**

Property Settlement Agreement, ¶ 5.

The Gasters' agreement clearly evinces an intent to incorporate and not merge the agreement into the divorce decree. *See Ashbaugh v. Ashbaugh*, 426 Pa.Super. 589, 627 A.2d 1210 (1993); *McGough v. McGough*, 361 Pa.Super. 391, 522 A.2d 638 (1987). *See also McMahon v. McMahon*, 417 Pa.Super. 592, 599–600, 612 A.2d 1360, 1364 (1992) (en banc) (where the language is clear and unambiguous, we need only examine the writing itself to determine whether or not the parties intended merger). The parties expressly state their intent to reject merger as well as their intent that the agreement survive the divorce decree.

■ Since the agreement was incorporated, and not merged, into the divorce decree, Mother could have either filed an action at law or in equity on the contract, or filed a separate complaint in support. *See Sonder, supra; Swartz v. Swartz*, 456 Pa.Super. 16, 689 A.2d 302 (1997); *Flick v. Flick*, 408 Pa.Super. 110, 113, 596 A.2d 216, 218 (1991) (where an agreement is merged into the divorce decree, it is no longer enforceable as a contract but is subject to the full range of modification and change permitted to support orders). Mother filed a petition for contempt. Father, however, had repudiated no order. Father responded with a counter-petition for contempt, and, following the contempt hearing, the court made no findings of contempt, and imposed no sanctions or fines.

■ An order which neither makes a present finding of contempt nor imposes sanctions is interlocutory and unappealable. *Kenis v. Perini Corporation*, 452 Pa.Super.

---

**3.** We emphasize, however, that section 3105(a) pertains to matters under Part IV of Title 23; *it is Part V that addresses child support,* specifically Chapter 43. *See* 23 Pa.C.S.A. § 4321 (Liability for support); *see also* 23 Pa.C.S.A. § 4321(3) ("Parents may be liable for the support of their children who are 18 years of age or older.");

*Jackson, supra.* Subchapter C of Chapter 43 addresses the procedure for commencement and enforcement of a child support matter, including the court's contempt powers. *See* 23 Pa.C.S.A. § 4345 (Contempt for noncompliance with support order).

634, 682 A.2d 845 (1996). *See Genovese v. Genovese,* 379 Pa.Super. 623, 550 A.2d 1021 (1988) (an order which neither makes a present finding of contempt nor imposes sanctions is interlocutory and not appealable); *see also Sonder,* 378 Pa.Super. at 482 n. 1, 549 A.2d at 159 n. 1 (a contempt order is interlocutory and unappealable until sanctions are imposed); *DeMasi v. DeMasi,* 408 Pa.Super. 414, 597 A.2d 101 (1991) (finding of contempt which did not execute on sanctions which were imposed but were to take place in the future was not appealable). We cannot review an order emanating from a contempt hearing when no order was repudiated. Absent a support order, Father was not subject to the court's contempt and attachment powers. *See* 23 Pa.C.S.A. § 4345 (Contempt for noncompliance with support order); 23 Pa. C.S.A. § 4348 (Attachment of income); *see also* 23 Pa.C.S.A. § 4352(a) ("The court making an order of support shall at all times maintain jurisdiction of the matter for the purpose of enforcement of the order ...").

We conclude, therefore, that Mother's filing of an action in contempt where no support order existed, and the court's entry of an order which neither made a finding of contempt nor imposed sanctions, vitiates the propriety of this appeal. *Kenis, supra; Genovese, supra.* Wife may pursue an action on the contract, at law or in equity, and seek damages for breach of the agreement or specific enforcement; Father, too, may pursue an action on the contract. Additionally, both parties are entitled to contractual defenses. Furthermore, Mother may file a separate support action, independent of the agreement, without compromising her rights under the agreement. *See Sonder, supra; see also Swartz, supra; Knorr, supra.* Notwithstanding the changes in the law, the courts and the parties remain bound by the procedures attendant to the enforcement method chosen and pursued.

Order vacated.