**Diane M. PATTERSON, Appellant,**

v.

**Steven M. ROBBINS, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 24, 1997.

Filed Dec. 16, 1997.

Stuart M. Wilder, Doylestown, for appellant.

Michael L. Viola, Philadelphia, for appellee.

Before KELLY, SCHILLER and BROSKY, JJ.

SCHILLER, Judge.

Appellant, Diane M. Patterson, appeals from the order entered March 4, 1997, in the Court of Common Pleas of Bucks County reducing appellee's child support obligations to $114.00 per week. We affirm.

FACTS:

The parties to this appeal signed a marital settlement agreement on June 6, 1988, which was incorporated but not merged into their divorce decree of June 23, 1988. It provided, in relevant part, that father (appellee) would pay child support to mother (appellant) of $100.00 per week for each of two children,[1] or a total of $200.00 per week, until the children were emancipated. Four months later, on October 26, 1988, mother filed a complaint in the Family Division of the Court of Common Pleas of Bucks County seeking to increase support for the children to $3,000.00 per month. After a conference on February 14, 1989, at which mother was represented, but not present,[2] the assigned domestic relations officer recommended that, since no change in circumstances had been established, support remain at $200.00 per week, and that the amount be entered as an order payable through the county's Domestic Relations Office (DRO)[3]. On October 24, 1989, a hearing was held in front of the trial court, and on January 17, 1990, the Court entered an Order increasing appellee's support obligation to $225.00 per week.[4]

On December 3, 1993, father filed a petition to modify support based on a reduction in his income, mother's remarriage, and her employment. Mother then filed a petition for contempt alleging father's failure to provide medical insurance. On March 21, 1994, following a hearing, the Court reduced support to $175.00 per week for four months, to be automatically reinstated at $225.00 per week on July 16, 1994, and ordered mother to provide health care coverage.

On June 23, 1994, father filed yet another petition to modify support. On September 9, 1994, support was again reduced: this time to $125.00 per week for one year.[5] On June 24, 1996, because Daniel was no longer living at home, father again petitioned to reduce support. In ruling on this petition the court took two actions: an order was entered to reflect an oral agreement made by the parties in August, 1995, to reduce support to $175.00 per week until September, 1996;[6]

---

1. The parties have two children: Daniel born on November 20, 1979, and Lisa born on May 27, 1982.

2. Appellant and her children reside in Tacoma, Washington.

3. At that time support payments were being made directly by father to mother per the agreement.

4. This order also addressed alimony payments, which remained at $200.00 per week, and father's obligation to provide medical insurance for the children.

5. The court also granted mother the right to claim Daniel as a tax deduction, and ordered father to reimburse her for medical expenses.

6. Despite the absence of a court order reflecting this agreement, the DRO began forwarding

and, on August 15, 1996, an order was entered reducing father's support to $114.00 per week for one child, Lisa, to increase to $175.00 per week if Daniel returned to his mother's custody. On October 30, 1996, upon Daniel's return, the order was modified to $175.00 per week. On December 23, 1996, father again petitioned to modify support, and on March 4, 1997, after a hearing,[7] an order was entered directing husband to pay $114.00 per week support for both children: this amount was derived from the Pennsylvania Child Support Guidelines.[8] Appellant filed a motion for reconsideration, which was denied on March 31, 1997. This appeal followed.

## DISCUSSION:

Despite the fact that appellant posits three issues,[9] there are really only two issues before us: whether the trial court could enter an award of child support below the amount established by the marital settlement agreement;[10] and whether appellant's original decision to file a support action vitiated the support provisions of the marital agreement.

The first issue was recently resolved by the Pennsylvania Supreme Court in the case of *Nicholson v. Combs,* — Pa. —, 703 A.2d 407 (1997), wherein the Court recognized that for all marital agreements following the enactment of 23 Pa.C.S. § 3105(b), the trial court has the power to modify the terms of the agreement with regard to child support upward or downward based on "changed circumstances."[11] The agreement in the present case was entered into approximately four months after the enactment of § 3105(b). Therefore, pursuant to *Nicholson, supra,* the trial court in this case was empowered to enter an award of child support below the amount called for in the marital agreement.

With regard to appellant's second issue, we note at the outset that the trial court never specifically held that appellant's rights under the marital settlement agreement were foreclosed.[12] However, to the extent that the court's decision might be so interpreted, we state that such an interpretation would be contrary to this Court's decision in *Swartz v. Swartz,* 456 Pa.Super. 16, 689 A.2d 302 (1997).

---

checks in the new amount ($175.00) to mother during this period.

7. Testimony was presented on two issues: the emancipation of Daniel from the mother's care and the income of each parent. The court found that father was obligated to support both children; that father had not intentionally reduced his income by giving his current wife a half interest in his business; and that the amount of income assessed to mother by the domestic relations officer should be reduced.

8. See Pa.R.Civ.P.1910.16–1.

9. Appellant phrased her issues as follows:

Did the lower court err by refusing to consider enforcement of the child support provisions of a marital settlement agreement when the Rules of Civil Procedure allow for enforcement of the agreement?

Did the lower court err in failing to enforce the child support provisions of a marital settlement agreement when the parties to the agreement agreed that it could be enforced in any available forum and could not be waived absent written agreement to such waiver?

Did the lower court err when ruling that despite a Rule of Civil Procedure allowing for enforcement of support agreements, the appellant had waived any and all right to enforcement of the child support provisions of her

1988 marital settlement agreement by filing a petition for child support?
Appellant's Brief p. 3.

10. We note that the present appeal is taken from an order granting father's motion to modify his support obligation; it was not initiated by a petition to modify the marital agreement.

11. Legislative amendments to the Pennsylvania Divorce Code, effective February 12, 1988, added the following language:

. . .

(b) A provision of an agreement regarding child support, visitation or custody shall be subject to modification by the court upon a showing of changed circumstances.
23 P.S. § 401.1(b), reenacted at 23 Pa.C.S. § 3105(b). *See also Sonder v. Sonder,* 378 Pa.Super. 474, 545, 549 A.2d 155, 191 (1988).

12. The trial court stated only that:

Plaintiff's decision to forego her contractual right to sue in order to seek the more immediate relief available to her in Family Court precluded her from challenging any future orders by relying upon the terms of the agreement.
*Patterson v. Robbins,* No. A06–88–60295–S, Court of Common Pleas of Bucks County, Slip Op., p. 3.

In *Swartz*, wife appealed a decision precluding her from bringing a contract action on her settlement agreement because she had previously filed a complaint for support in the family division of the court of common pleas. This court, distinguishing *Knorr v. Knorr*, 527 Pa. 83, 588 A.2d 503 (1991), and relying on *Brown v. Hall*, 495 Pa. 635, 435 A.2d 859 (1981), and its progeny, held:

> The existence of a court-imposed order of support does not vitiate a private agreement for support that has not been merged into a decree of divorce nor does it impede either parties' ability to enforce the terms of the agreement in an action in assumpsit or equity.

*Id.* at 22, 689 A.2d at 305. The rationale of the *Swartz* decision is supported by the Supreme Court's analysis in *Nicholson, supra,* wherein the Court specifically disavowed any interpretation of *Knorr* which would lead to a conclusion that a private marital agreement is vitiated by a party's recourse to Family Court. *Nicholson,* —— Pa. at ——–——, 703 A.2d at 416–17 (1997).[13]

## CONCLUSION:

█ The trial court had the authority to modify its own support order and to enter an award of child support below the amount established by the parties' settlement agreement. However, nothing in the trial court's decision should be construed as impinging on appellant's right to maintain a separate contract action on the settlement agreement.

Consequently, the Order of the Court of Common Pleas of Bucks County is affirmed.

---

**13.** We note that in this case mother has already filed a separate equity action in the Court of Common Pleas of Bucks County asserting a cause of action on the contract.