J-S29009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| E.B., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| A.D.B., | |
| Appellee | No. 916 WDA 2015 |

Appeal from the Order May 15, 2015
In the Court of Common Pleas of Erie County
Domestic Relations at No(s): NS201300434

BEFORE:  BENDER, P.J.E., PANELLA, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED JUNE 02, 2016**

E.B. (Mother) appeals from the order dated May 15, 2015, that modified an existing support order and directed A.D.B. (Father) to pay support for the parties' child, P.D.B. (Child), born in August of 2011.  After review, we affirm.

The trial court set forth the following pertinent facts and procedure, stating:

> This support matter was before the [c]ourt on [Mother's] Petition for Modification of an Existing Support Order.  Mother requested an increase in child support, alleging as follows:
>
>> Payment was calculated incorrectly using my gross income and [Father's] net.  Also, [Father] now receives money from the VA and has had several pay raises, while my income has decreased.

_____

[*] Former Justice specially assigned to the Superior Court.

Following a support conference, a March 11, 2015 Interim Order [was] issued[,] increasing [Father's] monthly support obligation to $1,024.97, plus arrears.[1]  The Order included the $667.95 monthly guideline amount, $4.54 monthly health insurance and $373.57 monthly preschool/daycare contribution.  In relevant part, the Order further provided:  "defendant is not obligated to provide 100% of his vacation earnings directly to the plaintiff."  Mother filed a Demand for Court Hearing.

[1] At the time of Mother's Petition for Modification, the parties were governed by an April 25, 2013 Order of Court assessing Father with a $976.47 monthly child support obligation, plus arrears.

At the *de novo* hearing, the parties focused exclusively on Mother's request that Father be ordered to pay her 100% of the funds deposited monthly into his Vacation Savings Account through his employer, IBEW Local 56.  Mother argued that Father was bound by a Legal Separation Agreement,[2] and "[A]mendment"[3] thereto, to pay to her every month the vacation funds for the Child's future education.  Following the May 13, 2015 *de novo* hearing, this [c]ourt issued its May 15, 2015 Order making the March 11, 2015 Order a final order.

[2] In February of 2013, the parties executed a document titled "Legal Separation Agreement."  *See* Exhibit A.  Paragraph 11 of the Legal Separation Agreement is titled "Division of Assets" and includes provisions for the division of the parties' marital home, financial accounts, life insurance and personal property.  The at issue provision provides:

Financial Accounts, [Mother] and [Father] own and agree to divide their financial accounts and investments as follows:

…

Account Name/Number: [Father] Vacation Savings Account through IBEW Local 56 Member #5770
Financial Institution: IBEW Local 56 Federal Credit Union
Current Account Owner: [Father]

- 2 -

[Father] Receives: 0% - will withdraw no money from account as of 2/9/2013
[Mother] Receives: 100% for [Child's] Education

[3] On October 2, 2013, the parties executed a document which provides as follows:

This document will provide for the removal of the $250.00 per week agreed upon child support arrangement as long as all divorce paperwork is expediently signed by [Father] and not contested and the rest of the original separation document is upheld completely. Both parties, [Father] and [Mother], agree to let the court decide the amount of child support to be paid by [Father] to [Mother] concerning [Child]. This document is null and void and the $250 child support arrangement will go back into effect, regardless of court order, should custody ever change where [Father] is awarded more custody by the court than the current custody schedule (if this change in custody is enough of a change to lower child support payments from [Father] to [Mother]). Also, concerning the money to be paid by [Father] to [Mother] for [Child's] education (from IBEW Local #56 vacation fund as outlined in separation agreement); this money is to be paid in full by [Father] to [Mother] by the 7th of each month, along with a statement showing all transactions. The last payment to be made August 7th following [Child's] high school graduation. If [Father] is to ever terminate employment with IBEW Local #56 either voluntarily or involuntarily, he is to be responsible for the vacation rate at the time of termination x 40 hours per week until August 7th following the year of [Child's] graduation. If [Father] is involuntarily laid off for a period of time, he will not be responsible for any money that does not get deposited into the vacation fund. This is to commence the day of signing.

*See* Exhibit B.

Trial Court Opinion (TCO), 7/15/15, at 1-2 (unnumbered). Thus, the May 15, 2015 order resulted in a $1,024.97 monthly support obligation, but did not obligate Father to pay Mother his vacation earnings for Child's college fund.

The trial court explained its reasoning for its determination, stating:

[T]he [vacation] funds shall be attributed to Father as income for purposes of calculating support. *See* Pa.R.C.P. 1910.16-2(a). Failure to do so reduces the child support owed for [] Child's benefit. Specifically, honoring the agreement would result in having Father pay less monthly child support in favor of putting away funds for this pre-school aged Child's potential college education. While planning for [] Child's future is an admiral goal, [] Child's right is to have the financial support of both parents now, not sometime in the future.[1]

. . .

Mother asserts that the [c]ourt should order Father to pay to her 100% of the vacation funds, in addition to the ordered child support amount, which already takes into account the vacation funds by attributing them as income to Father. Mother attempts to justify the "double dipping" by arguing that the parties agreed to a contribution from Father for [] Child's future education. It is well-settled, however, that the [c]ourt will "not condone 'double dipping,' *i.e.*, using the same revenue as a source for 'support' and 'equitable distribution.'" *Berry v. Berry*, 898 A.2d 1100, 1104 (Pa. Super. 2006)[,] *quoting Rohrer v. Rohrer*, 715 A.2d 463, 466 (Pa. Super. 1998); *see also Miller v. Miller*, 783 A.2d 832 (Pa. Super. 2001). This [c]ourt took into account the vacation funds and attributed them to Father as income. Without any legal authority from Mother to justify ordering, as

_____

[1] The trial court also notes that "the parental duty owed to the Child generally extends only until the child reaches the age of 18 or graduates from high school, whichever occurs later[.]" **Id.** at 4 (citing **Style v. Shaub**, 955 A.2d 403, 408 (Pa. Super. 2008)).

part of the support award, for Father to pay the same funds twice, the [c]ourt refused to institute such an unjust result.

*Id.* at 3-5.

Mother filed a timely appeal, raising one issue for our review:

DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IT FAILED TO ENFORCE A PROVISION OF THE PARTIES' LEGAL SEPARATION AGREEMENT AND "AMENDMENT" THERETO?

Mother's brief at 7.

When reviewing a child support order, we are bound by the following well-settled standard:

"When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground." **Calabrese v. Calabrese**, 452 Pa. Super. 497, 682 A.2d 393, 395 (Pa. Super. 1996). We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. **Id.** An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. **Depp v. Holland**, 431 Pa. Super. 209, 636 A.2d 204, 205-06 (Pa. Super. 1994); **[s]ee also Funk v. Funk**, 376 Pa. Super. 76, 545 A.2d 326, 329 (Pa. Super. 1988). In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests. **Depp**, 636 A.2d at 206.

**Belcher v. Belcher**, 887 A.2d 253, 256 (Pa. Super. 2005) (quoting **Samii v. Samii**, 847 A.2d 691, 694 (Pa. Super. 2004)). Moreover, "[t]he party seeking modification has the burden of establishing that current conditions differ from those in existence when the child support arrangements were

reached." **Id.** (citing **McClain v. McClain**, 872 A.2d 856 (Pa. Super. 2005)).

The essence of Mother's argument is that the court should have required Father to continue to contribute 100% of his vacation pay toward Child's education fund as required by the parties' Agreement and the Amendment. Specifically, Mother contends that the court erred by applying Father's "vacation pay towards its assessment of his monthly net [] income to calculate child support." Mother's brief at 17. Moreover, she asserts that the "court's rationale that honoring the [A]greement between the parties would result in less monthly child support is also misplaced." **Id.** Rather, Mother explains that if the Agreement/Amendment were enforced, Child would receive more of a benefit because the support payment plus the payment for the college fund would involve all of Father's income.[2]

Mother relies on **McMichael v. McMichael**, 700 A.2d 1337 (Pa. Super. 1997), and **Nicholson v. Combs**, 650 A.2d 55 (Pa. Super. 1994) (**Nicholson I**), for the proposition that the parties' "[A]greement constitutes the level below which support may not be modified." **McMichael**, 700 A.2d at 1339. She also quotes the following from this Court's decision in **McMichael**, wherein we stated:

_____

[2] However, at no point does Mother indicate what is Father's vacation pay amount.

[A] support provision in [an] agreement constitutes the level below which support may not be modified. Courts have general authority to modify their own support orders based upon changed circumstances. However, this does not permit modification below the level of support set forth in the agreement of the parties where the court has incorporated that agreement as part of its support order. The support obligation set forth in the agreement is an independent financial obligation between the parties. Support may be modified upward based on the unavoidable obligation which a parent owes to meet the reasonable needs of a dependent child, but this rationale does not extend to downward modification of the level of support set forth in parties' agreement once the court has adopted their agreement.

*Id.* at 1339. Thus, Mother contends that Father "should have been ordered to pay either the child support calculation which included his vacation pay along with payment of one hundred percent (100%) of his vacation pay towards the minor child's [education] fund or, in the alternative, be held to the original legal separation agreement which provides for child support in the amount of $250.00 a week along with payment of one hundred percent (100%) of [Father's] vacation pay made payable to [Mother] and held for the minor child's education fund." Mother's brief at 19.

Lastly, Mother asserts that 23 Pa.C.S. § 3105(a) allows either party to enforce an agreement in the domestic relations court. However, Mother does not include the language found at Section 3105(b), which references modification of an agreement. Section 3105 provides, in pertinent part:

**§ 3105.  Effect of agreement between parties**

**(a) Enforcement.**—A party to an agreement regarding matters within the jurisdiction of the court under this part, whether or not the agreement has be merged or incorporated into the decree, may utilize a remedy or sanction set forth in this part to

enforce the agreement to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement.

**(b) Certain provisions subject to modification.**—A provision of an agreement regarding child support, visitation or custody shall be subject to modification by the court upon a showing of changed circumstances.

23 Pa.C.S. § 3105(a), (b).

Father's position regarding the issue before this Court rests squarely on the question as to whether the Agreement/Amendment may be modified. He acknowledges that the Agreement provided for no modification. Agreement, Introductory Paragraph (stating "[t]he separation agreement is to survive the judgment of divorce as a separate legally binding contract and is not subject to any court modification"). However, Father then points out that Mother's initial complaint for modification of support, filed on March 28, 2013, resulted in the parties' entering into the Amendment, and required Father to pay $976.47 per month child support, which was an amount lower than the $250 per week agreed upon amount. *See* Amendment. According to the earlier order, Father was still obligated to pay 100% of his vacation pay to Mother for Child's education fund. Following the filing of Mother's second petition to modify, on January 19, 2015, the court ordered Father to pay $1,024.97 per month in child support, but determined that he was not obligated to pay 100% of his vacation pay to Mother for Child's education fund.

Father also counters Mother's reliance on the ***McMichael*** decision, which she claims denies a court the right to lower child support to an amount lower than stated in the Agreement. Father noted the ***McMichael*** court's reliance on the Superior Court's ***Nicholson I*** decision, which held that "a court could not modify a support agreement in a way that would reduce the amount of child support below that identified in the [A]greement." Father's brief at 5-6 (citing ***Nicholson I***, 650 A.2d at 59). However, Father references the Supreme Court's reversal of that aspect of the ***Nicholson I*** decision. ***See Nicholson v. Combs***, 703 A.2d 407 (Pa. 1997) (***Nicholson II***). The ***Nicholson II*** decision provides that "parties who executed agreements on or after February 12, 1988, knew that both downward and upward modification would be a possibility, and therefore they could negotiate their agreements relying on this proposition." ***Id.*** at 413. This discussion by Father provides a correct statement of the law as it presently stands. ***See Patterson v. Robbins***, 703 A.2d 1049, 1051 (Pa. Super. 1997) (stating that "the trial court has the power to modify the terms of the agreement with regard to child support upward or downward based on 'changed circumstances'").

Father further indicates that by filing the modification petition, Mother acknowledged a change in circumstances, which then authorized the court to modify the child support amount. ***See*** 23 Pa.C.S. § 3105(b). Even though Mother was requesting a change in the monthly child support payment, she was not requesting a change to the education fund payment. Father

identifies both payments as relating to child support, and contends that the court properly evaluated all payments he made in conjunction with his support of Child.

In reviewing the trial court's decision, we agree with its reliance on the following language from ***Kraisinger v. Kraisinger***, 928 A.2d 333 (Pa. Super. 2007):

> Parties to a divorce action may bargain between themselves and structure their agreement as best serves their interests[] ...[.] They have no power, however, to bargain away the rights of their children[] ...[.] Their right to bargain for themselves, is their own business. They cannot in that process set a standard that will leave their children short. Their bargain may be eminently fair, give all that the children might require and be enforceable because it is fair. When it gives less than required or less than can be given to provide for the best interest of the children, it falls under the jurisdiction of the court's wide and necessary powers to provide for that best interest.... [The parties' bargain] is at best advisory to the court and swings on the tides of the necessity that the children be provided.

***Id.*** at 340-41 (quoting ***Knorr v. Knorr***, 588 A.2d 503, 505 (Pa. Super. 2007)).

However, we are troubled by the court's use of the "double dipping" terminology, because that term references "the same revenue as a source for 'support' and 'equitable distribution.'" ***See Berry v. Berry***, 898 A.2d 1100, 1104 (Pa. Super. 2006); ***see also*** TCO at 4. Here, the issue as to the vacation funds does not concern equitable distribution; rather, it is a question relating solely to child support, either to be counted toward monthly support or to be invested for Child's future education. The

underlying question rests on whether the vacation funds are or are not income as defined in Section 4302 of the Domestic Relations Code, which provides:

> "Income." Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S. § 4302. *See also* Pa.R.C.P. 1910.16-2. Moreover, "[w]hen determining income available for child support, the court must consider all forms of income." *Berry*, 898 A.2d at 1104 (quoting *MacKinley v. Messerschmidt*, 814 A.2d 680, 681 (Pa. Super. 2002)).

Clearly, the amount Father's employer pays into Father's vacation account is income that Father earns as part of his compensation. Therefore, we conclude that the court correctly determined that that sum is income and should be included in the calculation of Father's support obligation. The question then arises: Does the parties' Agreement/Amendment override the court's conclusion that the vacation pay must be included in the calculation of the monthly support payment or can it be designated as a contribution for

- 11 -

Child's future schooling? We conclude that pursuant to the **_Kraisinger_** decision, the court had the power to require that Father's vacation pay be included in the calculation of his income for support purposes, because failing to calculate it in that manner would reduce the monthly support payment. **_See Kraisinger_**, 928 A.2d at 340-41 (stating that when the agreement gives "less than can be given to provide for the best interest of the children, it falls under the jurisdiction of the court's wide and necessary powers to provide for that best interest…"). Simply stated, the Agreement/Amendment is advisory, not controlling.

Accordingly, after review, we affirm the trial court's determination, even though on a slightly different basis.[3] The court's conclusions "were not reached as the result of partiality, prejudice, bias, or ill-will nor was the law overridden or the judgment exercised manifestly unreasonable." **_See id._** at 343.

Order affirmed.

_____

[3] "[W]e may affirm a trial court's ruling on any basis supported by the record on appeal." **_D.M. v. V.B._**, 87 A.3d 323, 330 n.1 (Pa. Super. 2014) (quoting **_Lynn v. Nationwide Ins. Co._**, 70 A.3d 814, 823 (Pa. Super. 2013)).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/2/2016