627 A.2d 1210

**Brian W. ASHBAUGH, Appellant**

v.

**Barbara P. ASHBAUGH.**

Superior Court of Pennsylvania.

Argued April 29, 1993.

Filed July 8, 1993.

590

Kim D. Eaton, Pittsburgh, for appellant.

Bernadette Staroschuck, Pittsburgh, for appellee.

Before ROWLEY, President Judge, and TAMILIA and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from the final order of the lower court which dismissed appellant's exceptions and directed appellant to pay support for his children in accordance with the terms of the parties' marital agreement.

Appellant presents the following issues for review: (1) whether the trial court erred in concluding that the parties' intended that their agreement would survive entry of the divorce decree and not merge therewith; and (2) whether the parties' conduct in and rulings relating to prior litigation evinced an intent to treat the agreement as a modifiable court order, and if so, whether the law of the case or some other similar doctrine applies so as to render the agreement modifiable in the instant action. For the reasons set forth below, we affirm the order of the trial court.

We will briefly recount the relevant facts and history of this case before proceeding to consider the merits of this appeal. Appellant, Brian Ashbaugh, and appellee, Barbara Ashbaugh, were married in New York in June, 1966. The parties formally separated in 1983 and were divorced in 1985. Two children, Robert and James, were born during the marriage.[1] The parties also adopted a Korean child, Allison Ashbaugh, while they were married.[2] Both parties later remarried and appellant has had children with his second wife.

Following the parties' separation, appellee instituted an action for the support of herself and her three children. This action was later discontinued when the parties entered into a settlement agreement on September 1, 1983. The agreement required, *inter alia*, that appellant pay support in the amount of four hundred dollars ($400.00) per child per month, *i.e.*, a total of twelve hundred dollars ($1,200.00) per month for the support of the three minor children. The agreement further set forth a formula for adjusting the amount of child support

---

1. Robert was born in January, 1968 and is twenty-five years of age at the present time. James was born in December 1970 and is twenty-two.

2. Allison was born in May, 1972 and is now twenty-one years of age.

pursuant to which appellant's current federal gross income would be compared to his 1983 federal gross income and the percentage increase or decrease resulting therefrom would be multiplied by $400.00 to determine the new amount of support for the following year. In addition, the agreement requested that the court approve the agreement and either recite the approval in the divorce decree, incorporate the agreement into the decree, or incorporate and merge the decree. The agreement also explicitly stated that it would survive entry of the decree and continue to be enforceable unless the agreement was expressly merged into the divorce decree by the court. Paragraph thirteen of the agreement, which involved disposition of the parties' property and payment of marital debts, was later modified pursuant to an amendment executed on April 12, 1985.[3]

Appellant subsequently instituted divorce proceedings against appellee. The parties were divorced, upon mutual consent, in April, 1985. The divorce decree entered by the court provided that the parties' rights would be governed by the September, 1983 agreement and the April, 1985 amendment thereto. Although the decree expressly incorporated the agreement and amendment, the lower court never expressly stated that the agreement and amendment merged with the decree.

Following entry of the divorce decree, the parties have engaged in numerous disputes regarding matters of child support and payment of the children's medical expenses. The first challenge arose when appellant refused appellee's repeated requests that appellant pay for orthodontic work for his daughter, Allison, as he was obligated to do under the agreement. As a result, appellee instituted an action to enforce the agreement during the latter part of 1985. A hearing was held in January, 1986 following which appellant was directed to pay Allison's dental expenses. Appellee was also awarded counsel fees and costs. Appellant filed excep-

3. The 1985 amendment only modified paragraph 13 and did not affect any of the child support provisions which are at issue here. Consequently, the 1985 amendment will not be further discussed.

tions to the hearing officer's recommendations which were dismissed by the trial court. Orders affirming the hearing officer's directive that appellant pay for his daughter's dental expenses as well as the award of counsel fees and costs were entered on February, 19, 1986. Appellant did not appeal these orders.

Several months later the parties' son, Robert Ashbaugh, instituted a support action against his father. Following a hearing, an award of support in the amount of $540.00 was recommended by the hearing officer. Appellant filed exceptions in which he asserted, among other things, that the hearing officer erred in failing to calculate the award in accordance with the terms of the parties' agreement. Appellant's exceptions were granted to the extent that the lower court reduced the award to $460.00, the amount of support which appellant would be required to pay pursuant to the parties' agreement. Robert filed a petition for reconsideration of the order in which he suggested that his award of college expenses should not be governed by the support agreement because he was not a party thereto. The court disagreed and denied Robert's request for reconsideration. Neither party appealed the support order. Support payments to Robert terminated when he graduated from college.

No further litigation ensued until 1989, when the parties' daughter was admitted into a drug rehabilitation clinic and later transferred to an adolescent recovery center. Pursuant to the parties' agreement, appellant was obligated to pay the child's costs of treatment. However, appellant filed a petition in which he sought to modify that portion of the agreement which required him to pay for non-reimbursable medical expenses. Appellant also requested the court to abate his support obligation until Allison returned to live with appellee. In response to appellant's petition, the trial court entered an order on February 9, 1989 which directed the parties to appear for a hearing limited to the question of whether the court order, i.e., the decree which incorporated the agreement, could be modified. Appellant requested several continuances which were granted by the lower court. The certified list of

docket entries submitted to this court indicates that no hearing was ever held and that no further action was taken with respect to appellant's petition.

The parties' most recent dispute arises out of appellant's refusal to increase his support payments in accordance with the formula set forth in the agreement. As a result, appellee instituted this action to enforce the terms of the agreement. Appellant responded by filing a petition for modification of his support obligation in which he sought to have the support award calculated in accordance with existing Pennsylvania law rather than the formula specified in the parties' agreement. These matters were consolidated and a hearing thereon was conducted on February 28, 1992. The hearing officer subsequently recommended that the lower court dismiss appellant's petition for modification and require appellant to pay support in the amount calculated pursuant to the formula contained in the parties' agreement. A temporary order effectuating the hearing officer's recommendations was then entered. Appellant thereafter filed timely exceptions which were denied by the trial court. After entry of a final order in this matter, appellant initiated this timely appeal.

The scope of review in a typical support matter focuses upon whether the trial court abused its discretion. *Blue v. Blue,* 532 Pa. 521, 525, 616 A.2d 628, 630 (1992). An abuse of discretion is "[n]ot merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Id.,* 532 Pa. at 526, 616 A.2d at 631 (citations omitted). We will evaluate appellant's arguments and the decision of the trial court in accordance with this standard.

Appellant first argues that the agreement must be deemed to have merged with the decree pursuant to *Commonwealth ex. rel. Tokach v. Tokach,* 326 Pa.Super. 359, 474 A.2d 41 (1984), *overruled by D'Huy v. D'Huy,* 390 Pa.Super. 509, 568 A.2d 1289 (1990) (*en banc*), *allocatur denied,* 525 Pa. 646,

581 A.2d 572 (1990). Appellant's reliance on *Commonwealth ex rel. Tokach v. Tokach* is misplaced. In *Tokach,* this court held that a settlement agreement which is incorporated into a divorce decree, either by reference or set out in full, merges into the decree and should no longer be given independent effect. *Id.,* 326 Pa.Super. at 362, 474 A.2d at 42. However, *Tokach* is factually distinguishable in that the agreement therein did not contain a non-merger provision and it appeared from the parties' agreement that they intended to permit modification by court order. By way of contrast, the parties' agreement in the case *sub judice* expressly addresses the question of merger and the parties' intent that the agreement survive entry of the divorce decree. Further, *Tokach* is no longer controlling as it was expressly overruled by an *en banc* panel of this court.[4] *See D'Huy v. D'Huy,* 390 Pa.Super. at 517, 568 A.2d at 1293.

In analyzing questions of merger and modifiability, we must ascertain whether or not a merger was intended by the parties. *McGough v. McGough,* 361 Pa.Super. 391, 394, 522 A.2d 638, 640 (1987), *allocatur denied,* 515 Pa. 623, 531 A.2d 431 (1987). This determination is made by analyzing the terms of the agreement itself. *Id.* When construing agreements involving clear and unambiguous terms, this court need only examine the writing itself to give effect to the parties'

---

4. We also note that the 1988 amendments and 1990 provisions which repeal and re-enact the Divorce Code are inapplicable to the parties' 1983 agreement which was executed prior to the effective date of the 1988 and 1990 acts. *See* 23 P.S. § 103 and the Act of December 19, 1990, P.L. 1240, No. 206, § 5 *codified at* 23 Pa.C.S.A. § 3101, Historical and Statutory Note (which indicate that the provisions of the Divorce Code shall not affect any marital agreement executed prior to the effective date of the Divorce Code of 1980 or any amendment or modification thereto). To the extent that appellant suggests that *D'Huy* and this court's subsequent decisions are inapplicable in the instant case as they were decided long after the execution of the parties' settlement agreement, we must reject appellant's assessment. Even before *D'Huy* was decided, this court applied the same analysis relied upon in *D'Huy* to marital agreements executed prior to the effective date of the 1988 amendments to the Divorce Code. *See, e.g., McGough v. McGough,* 361 Pa.Super. 391, 394, 522 A.2d 638, 640 (1987), *allocatur denied,* 515 Pa. 623, 531 A.2d 431 (1987); *Sonder v. Sonder,* 378 Pa.Super. 474, 488–495, 549 A.2d 155, 162–166 (1988) (*en banc*).

understanding. *McMahon v. McMahon,* 417 Pa.Super. 592, 599–600, 612 A.2d 1360, 1364 (1992) (*en banc* ). As this court has also recognized,

> it is settled that, if a property settlement agreement containing support provisions survives as an enforceable contract, it is governed by the law of contracts. . . . If a property settlement agreement is merged into a divorce decree or court order, . . . the agreement takes on all of the attributes of support [o]rders for purposes of modification and enforcement. Such an agreement, therefore, is no longer enforceable as a contract but is subject to the full range of modification and change permitted to [support] [o]rders. . . .

*Flick v. Flick,* 408 Pa.Super. 110, 113, 596 A.2d 216, 218 (1991), *allocatur denied,* 529 Pa. 657, 604 A.2d 249 (1992) (citations and quotation marks omitted). *Accord McMahon v. McMahon,* 417 Pa.Super. at 598, 612 A.2d at 1363; *D'Huy v. D'Huy,* 390 Pa.Super. at 515–517, 568 A.2d at 1292–1293.

■ As applied here, the 1983 marital agreement discussed several options regarding its effect and enforcement and is set forth in relevant part as follows:

> In the event that either party secures a decree of divorce or dissolution of marriage in any court of competent jurisdiction, this agreement shall be presented to the court for its approval and the court shall be prayed and requested to recite the approval of the agreement in the decree or to incorporate the agreement in the decree by reference or to incorporate the agreement in the decree by reference and merge the agreement in the decree. The parties stipulate and agree that unless this agreement is expressly merged in a decree of divorce or dissolution of marriage hereafter entered, the terms hereof shall continue, notwithstanding the entry of such decree hereafter, to be fully independent and viable in themselves, and enforceable to the same extent and by the same means and remedies as though such decree had not been entered.

Agreement, dated September 1, 1983, at paragraph twenty-eight, pp. 10–11. The trial court's divorce decree expressly incorporated the agreement and provides:

> The rights of the parties shall be governed by the Agreement dated September 1, 1983, and attached hereto as Exhibit "A", and the Modification and amendment to Agreement Dated September 1, 1983, dated April 12, 1985, and attached hereto as Exhibit "B", between the plaintiff and Defendant which are incorporated into this decree.

Decree in Divorce, dated April 19, 1985.

A review of the agreement and the divorce decree reveals that the marital agreement was expressly incorporated but not expressly merged into the divorce decree. The parties' agreement clearly indicates that the parties intended that the agreement would survive entry of the divorce decree unless the agreement was expressly merged into the decree. Because the decree does not provide that the agreement is merged therein, the agreement survived entry of the decree and is not subject to modification by the court. *Flick v. Flick, supra.*

■ While appellant does not seriously dispute the language contained in the agreement, he nevertheless argues that we must look to the parties' conduct subsequent to the execution of the agreement and entry of the divorce decree to determine their intent. The essence of appellant's reasoning is that the parties' subsequent conduct establishes an intent to treat the agreement as a court order which is subject to modification. Appellant also urges this court to conclude that the parties' conduct in prior actions to enforce the agreement and the trial court's rulings in these proceedings has rendered the agreement modifiable in the present action pursuant to the doctrines of the law of the case and res judicata. Unfortunately, appellant does not refer us to any relevant statutes or cases in support of his position nor has our own research disclosed any such authority.[5] We are, moreover, unpersuad-

5. We note that our Supreme Court has indicated that where a parent chooses not to sue on the agreement but seeks redress by filing a

ed by appellant's mischaracterization of appellee's conduct and the trial court's rulings.

A review of the previous litigation between the parties does not support the inferences drawn by appellant. The record indicates that appellee sought to enforce the terms of the agreement through the filing of a contempt petition.[6] However, the fact that appellee utilized the wrong procedure cannot impute an intent to her which is contrary to the clear intent expressed in the written agreement and which is totally inconsistent with the results sought to be achieved via the prior actions, *i.e.*, enforcement of the terms of the written agreement. The trial court's orders also recognize that the parties intended their agreement to survive entry of the divorce decree, as the court has repeatedly enforced the terms of the agreement in each action. We therefore conclude that the parties' conduct and the trial court's rulings evidenced no intent to treat the agreement as a modifiable court order.

support complaint, the parent forsakes his or her contractual rights under the agreement and the court is not bound by the terms of the agreement. *See Knorr v. Knorr*, 527 Pa. 83, 86–87, 588 A.2d 503, 504–505 (1991). Unlike the circumstances in *Knorr*, however, appellee has not petitioned the court in either the present action or in any prior proceedings for an increase in the amount of child support. Appellee also has not forsaken the benefits of the agreement by filing a support complaint in any of the actions which she instituted against appellant. Rather, appellee's conduct reveals that she has consistently sought to enforce the terms of the agreement. Consequently, we find *Knorr* to be factually distinguishable from the case *sub judice*. *Knorr* also never addressed the question of whether a party's conduct in filing a support complaint in one action would preclude that party from seeking to enforce the contract in future disputes. *Knorr* thus did not address the res judicata effect, if any, to be accorded to the parties' conduct.

6. Prior to the 1988 amendments, agreements could only be enforced by an action in assumpsit or equity. *See, e.g., Sonder v. Sonder*, 378 Pa.Super. 474, 489, 549 A.2d 155, 162 (1988). However, the 1988 and 1990 amendments to the Divorce Code now expressly permit parties to enforce an agreement through the remedies provided in the Divorce Code, which include the court's powers of contempt and wage attachment. *See* 23 P.S. § 401.1 and 23 Pa.C.S.A. § 3105(a). Appellant neither challenged the procedure employed by appellee to enforce the agreement nor appealed from the trial court's prior orders enforcing the agreement and awarding appellee counsel fees. Appellant similarly acquiesced in the trial court's action concerning Robert's support petition. Thus, the propriety of these previous proceedings and the rulings therein are not properly before us for review.

Appellant's arguments regarding application of the doctrines of the law of the case or res judicata are likewise without merit. The law of the case doctrine "means that whatever is once irrevocably established as the controlling legal rule of decision between the same parties in the same case continues to be the law of the case." *Banker v. Valley Forge Insurance Co.*, 401 Pa.Super. 367, 374, 585 A.2d 504, 508 (1991), *allocatur denied,* 529 Pa. 615, 600 A.2d 532 (1991) (citations and quotation marks omitted). The doctrine of res judicata involves a somewhat different analysis. For that doctrine to be applied, there must be: (1) an identity in the thing sued upon; (2) an identity in the cause of action; (3) an identity of persons and parties to the action; and (4) an identity of the capacity of the parties suing or being sued. *Id.,* 401 Pa.Super. at 375, 585 A.2d at 508. Appellant is not eligible for relief pursuant to either doctrine because the elements thereof have not been met. Even were we to assume, *arguendo,* that the criteria had been fully satisfied, application of the doctrines would still require appellant's support obligation to be determined in accordance with the terms of the written agreement since the trial court's prior rulings have all resulted in the enforcement of that agreement.

Our scrutiny of the record has further convinced us that the doctrines of the law of the case or res judicata are also inapplicable to the February 9, 1989 order entered by the lower court. This order is set forth as follows:

AND NOW, to wit, this 9th day of Feb[.], 1989, the foregoing Petition to Modify the Existing Support Order having been filed in this Court, the parties hereto are directed to appear in Room 603 City–County Building, Grant Street, Pittsburgh, Pennsylvania for a court hearing on the 7th day of April, 1989, 8:30 [a].m., or as soon thereafter as suits the convenience of the court, limited to [the] question of whether the court *order* (i.e., decree incorporating agreement) should be modified, as opposed to modification of the agreement.

Order, dated February 9, 1989 (emphasis in original). As indicated by the terms of the order, the court merely sched-

uled a hearing, the subject of which was limited to the question of whether the divorce decree could be modified. Although the order evinced a recognition of the fact that the parties' agreement could not be modified and that the divorce decree *might* be subject to modification by the court, the order was never intended to represent a final legal ruling on this issue. It thus would be completely improper to apply the aforementioned doctrines to a trial court order which does not constitute a final ruling that the divorce decree is subject to modification.

In sum, we find that the trial court did not err in concluding that the parties' agreement expressed their clear and unambiguous intent that the agreement would not merge with the divorce decree. The trial court likewise did not err in concluding that the parties' conduct evinced no intent to treat the agreement as a court order. The trial court also properly determined that the doctrines of res judicata and the law of the case did not require the prior litigation to be given res judicata effect in this case. We therefore affirm the order of the trial court.

Order affirmed.