Adrienne **BOULLIANNE**, Appellant,

v.

Dominic F. **RUSSO**, Appellee.

Superior Court of Pennsylvania.

Submitted May 20, 2002.
Filed March 11, 2003.

---

Bruce A. Roth, Lancaster, for appellant.

Greta R. Aul, Lancaster, for appellee.

BEFORE: STEVENS*, BENDER, and MONTEMURO **, JJ.

OPINION BY STEVENS, J.:

¶ 1 Appellant, Adrienne Boullianne, ("Mother") appeals the November 16, 2001 Order of the Court of Common Pleas of Lancaster County dismissing her Petition for Modification of a Child Support Order. For the following reasons, we affirm.

¶ 2 Appellant and Appellee, Dominic Russo, ("Father") were never married to each other, but cohabited between 1985 and 1994, during which time their two children were born. Father left the household in 1995, and in May of that year, the parties entered into a counseled agreement requiring Father to support the chil-

---

* Retired Justice assigned to Superior Court.

** Justice MONTEMURO did not participate in this decision.

dren financially, to maintain hospitalization and major medical insurance for the children, and to make all "co-payments and deductibles applicable to medically necessary treatment, excluding cosmetic or elective treatment." (Agreement of May 24, 1995 at 2).

¶ 3 In September of 1998, after Father refused to make certain medical expenses, Mother filed a support action in derogation of the agreement. After an interim support order was entered, Father filed a declaratory judgment action to determine the legitimacy of the agreement's support provisions. The two actions were consolidated, and following trial, the lower court held that Father had breached the agreement by failing to pay the children's medical expenses. Accordingly, the lower court entered a final support order on January 8, 2000 that, *inter alia,* reflected the parties' agreement that Father would pay one hundred percent of the children's unreimbursed medical expenses. On Father's timely appeal to this Court, we affirmed on the basis of the lower court's opinion. *See Boullianne v. Russo,* No. 592 MDA 2000, unpublished memorandum, 767 A.2d 1103 (Pa.Super. filed October 26, 2000).

¶ 4 One month after this Court filed its decision, Father filed a Petition for Modification of an Existing Support Order based on alleged changed circumstances. A support conference on March 12, 2001 resulted in a March 22, 2001 court order reducing Father's responsibility to pay unreimbursed medical expenses from one-hundred percent to eighty-two percent of expenses.

¶ 5 Failing to appeal from the March 22, 2001 order, Mother filed a petition to modify on May 21, 2001. A conference on July 24, 2001 convinced the court that Mother's petition presented no new circumstances, but was, instead, an appeal of the previous support order, which the court refused to revisit. Accordingly, the court issued an order dated November 16, 2001, upholding the reallocation of medical expenses provided for in the March 22, 2001 order. This appeal followed.

¶ 6 Mother raises three issues on appeal:

**I.** Whether the Court below erred in contradicting a prior ruling of this Honorable Court and by failing to follow the doctrine of the Law of the Case?

**II.** Whether the Court below erred in improperly reallocating medical expenses in violation of a support agreement between the parties which this Court previously found to be valid and binding?

**III.** Whether the Court below erred in finding that [Mother] had waived her right to appeal an issue which had already been decided in her favor by a higher court?

Brief of Appellant at 3.

¶ 7 The scope of review in a support matter focuses upon whether the lower court abused its discretion. *Ashbaugh v. Ashbaugh,* 426 Pa.Super. 589, 627 A.2d 1210 (1993). An abuse of discretion is "[n]ot merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record, discretion is abused." *Id.* (citation omitted).

¶ 8 Because it is dispositive, we begin by reviewing Mother's third issue. At its center is Mother's contention that review of her petition represented the only way to correct the lower court's allegedly erroneous revisitation of a support issue finally decided by this Court. We disagree with her contention.

¶ 9 First, a petition to modify a previous support order represents neither the only nor even an acceptable way to appeal the previous order's disposition of a particular matter. *See Crawford v. Crawford*, 429 Pa.Super. 540, 633 A.2d 155, 157 (1993) ("A petition to modify an order of support cannot be a substitute for an appeal and a party may not attempt to relitigate matters adjudicated in the existing order.") (citing *Koller v. Koller*, 333 Pa.Super. 54, 481 A.2d 1218 (1984)). One different and acceptable way[1] to have challenged the Court's interim order is found in Pa.R.C.P. 1910.11, which provides a ten-day period of time from the entry of an interim support order in which to file exceptions to the order. Mother passed on this opportunity, and the order became final. Thereafter, Mother pursued no direct appeal from the final order, but instead filed the subsequent petition to modify at issue. Her petition, the lower court correctly found, did not assert changed circumstances as required under 23 P.S. § 504, and was nothing more than an untimely appeal from the March 22, 2001 order. The court, therefore, appropriately dismissed it as such.

¶ 10 Second, this Court's prior decision to affirm the support order upholding the validity of the parties' agreement with respect to medical expenses did not, as a matter of law, foreclose downward modification of that portion of the support order at some future date. Indeed, a family court's power to modify a support order downward is not precluded by the existence of an agreement upon which the support order is based. "In [a] support action,...the payee may not claim that the [agreement] prevents the family court from modifying the order downward if such reduction is necessary to prevent payor from having to comply with an order that he cannot pay due to changed circumstances." *Nicholson*, 550 Pa. at 44, 703 A.2d at 417. "Because failure to comply with a support order can lead to incarceration, the court must be able to reduce the amount if the payor establishes an inability to pay." *Nicholson*, 550 Pa. at 43, 703 A.2d at 416–417.

¶ 11 Similarly, statutory law effective at the time the parties entered into their counseled support agreement permits a court to modify the agreement itself. 23 Pa.C.S.A. § 3105 provides that "[a] provision of an agreement regarding child support, visitation, or custody shall be subject to modification by the court upon a showing of changed circumstances." 23 Pa. C.S.A. § 3105(b). While the March 22, 2001 order did not actually effect a downward modification of the parties' agreement,[2] but instead reduced Father's sup-

---

1. Pursuing an action on the agreement itself represents another means of enforcing support terms therein to which a party claims entitlement. *See Swartz v. Swartz*, 456 Pa.Super. 16, 689 A.2d 302 (1997) (existence of a court-imposed order of support does not vitiate a private agreement for support not merged into a decree of divorce or entered as a court order, nor does it impede either parties' ability to enforce the terms of the agreement in an action in assumpsit or equity). *See also Patterson v. Robbins*, 703 A.2d 1049, 1052 (Pa.Super.1997); *Nicholson v. Combs*, 550 Pa. 23, 43–44, 703 A.2d 407, 417 (1997). It appears that the March 22, 2001 order was based in no part on the parties' agreement,

and it thus may be that the order would not impede an action on the agreement. However, Mother's petition to modify the support order clearly was an alternate to, and not the equivalent of, an action to enforce the agreement. *See Nicholson v. Combs*, 550 Pa. 23, 40–41, 703 A.2d 407, 415–416 (1997); *Ashbaugh v. Ashbaugh*, 426 Pa.Super. 589, 627 A.2d 1210 (1993) (parent seeking redress in family court through filing of support claim forsakes at trial the right to insist on binding effect of private agreement).

2. Acting *pro se* at the March 12, 2001 support conference, Mother apparently failed to raise

port obligations strictly on an analysis of the parties' respective incomes, Section 3105 clearly would have permitted modification of the agreement if Father demonstrated an inability to pay. We, therefore, reject Mother's "law of the case" argument that previous court approval of the parties' agreement foreclosed the possibility of court modification of support where circumstances warrant.

¶ 12 The lower court's order dismissing Mother's petition to modify as a misapplied and untimely appeal to the March 22, 2001 order was, for the foregoing reasons, appropriate. Accordingly, we affirm.

¶ 13 Affirmed.

the parties' agreement for the judge's consideration.