J-A02038-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| A.G.Z., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| H.A.K.S., | : | |
| | : | |
| Appellee | : | No. 1024 WDA 2017 |
| | : | |
| | : | |

Appeal from the Order June 13, 2017
In the Court of Common Pleas of Mercer County Domestic Relations at
No(s): No. 2009-870 583 DR 2016

| A.G.Z., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| H.A.K.S., | : | |
| | : | No. 1052 WDA 2017 |
| | : | |
| | : | |
| Appellee | : | |

Appeal from the Order Dated June 11, 2017
In the Court of Common Pleas of Mercer County Civil Division at No(s):
No. 2009-870, 583 DR 2016

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MARCH 14, 2018**

In these consolidated appeals, Mother, A.G.Z., challenges the decision of the trial court to reduce the child support obligation of Father, H.A.K.S., for the parties' one child, despite the parties' private agreement setting a minimum and maximum support obligation.[1] Because we find child support obligations are always modifiable based on the parties' circumstances, we affirm.

Mother and Father are the parents of one daughter, S.G., who is ten (10) years old. The parties were never married to each other. Mother has sole legal and physical custody of the child. Father resides in Alabama with his wife and four (4) children. Shortly after the child was first born, in 2008, the parties negotiated a Custody Consent Stipulation and Agreement relating to custody and child support. Regarding support, Father agreed to pay $7,000 per month; the terms of this agreement stated that the amount of support was non-modifiable.

When they entered this agreement, Father played in the NFL. He played for the Pittsburgh Steelers from 2002 through the 2008-2009 season. He was out most of the 2009-2010 season with an injury. At the start of the 2010-2011 season, Father signed back on with the New England Patriots and later, the Buffalo Bills. He retired from the NFL for good at the end of that season.

_____

[1] Mother filed a separate appeal from the trial court's original order and another appeal, once the court amended its order. This Court consolidated the appeals on August 2, 2017.

While he was injured in 2009, Father filed a petition to modify the 2008 Agreement. Before a hearing on the petition, the parties agreed at the courthouse to settle the dispute; they entered into a new agreement on the record with the assistance of a judge. The Agreement was reduced to a court order. The critical terms are these: Father shall pay in support $7,000 per month while Father plays in the NFL; Father shall pay $4,000 if he is not playing in the NFL. And, in any event, Father shall owe support until the child turns 18 and graduates high school. The 2009 Agreement also included provisions for Father to pay health and life insurance and contribute to a college fund for the child. Father followed this agreement for seven (7) years.

In June 2016, he filed another petition to modify his child support obligation, after experiencing changes to his financial circumstances. The trial court determined the support obligation in the 2009 Agreement was modifiable and directed Father to file a claim through the Domestic Relations Office. After a support conference, an order was entered setting a Guideline support amount at $1,285.98, based on the parties' incomes. Following a *de novo* hearing before the trial court, the court adopted the conference officer's findings and support amount. This appeal followed.

Mother presented seven issues for our review:

1. Whether the trial court erred in finding that the June 5, 2009 Consent Order is not a binding, non-modifiable contact between the parties.

2. Whether the trial court erred in that it did not require Father to prove that a material and substantial change in circumstance existed to justify a modification of his child support obligation.

3. Whether the trial court erred in finding that there was evidence of a change in circumstance to justify a downward modification of Father's child support obligation.

4. Whether the trial court erred when it modified Father's support obligation when there was no evidence that Father was unable to meet his financial obligation under the June 5, 2009 Consent Order.

5. Whether the trial court erred in that it did not consider whether modification of support is in the best interest of the child.

6. Whether the trial court erred in that it did not provide Mother with the opportunity for a hearing to address her claim for attorney's fees.

7. Whether, based on the totality of the circumstances, the trial court abused its discretion when it modified Mother's support obligation.

Our review is guided by the following standard:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

***K.J.P. v. R.A.P.,*** 68 A.3d 974, 978 (Pa. Super. 2013) (citation omitted).

We address Mother's appellate issues in order. Mother sets forth three arguments to support her contention that the 2009 Agreement was non-

modifiable. Relying on contract law, Mother first argues that there was no evidence of fraud, coercion or lack of good faith. Next, she claims that Section 3105 (b) of the Divorce Code does not apply because the parties were never married. Likewise, she claims that Rule of Civil Procedure 1910.19 does not apply because the parties' 2009 Agreement was not a support order. We reject all of these claims.

To support her contract law argument, Mother relies on the Court's decision in **Kraisinger v. Kraisinger**, 928 A.2d 333 (Pa. Super. 2007). In that case, we observed:

> Contracts between husband and wife, if fairly made are generally considered binding as to them, although legally ineffective to oust the jurisdiction of the court in a support action. A mother cannot, by contract, bargain away the right of her minor children to adequate support from the father, regardless of the validity of the agreement as between the parents themselves. *In each case it is for the court to determine whether or not the terms of the agreement are reasonable*, made without fraud or coercion and have been carried out in good faith.

**Kraisinger**, 928 A.2d at 345 (*citing* **Sams v. Sams**, 808 A.2d 206, 2011 (Pa. Super. 2002)(citations omitted)(emphasis in original). Mother relies on the last sentence of this quote and argues that Father did not allege or prove fraud, coercion or lack of good faith on her part. Even if correct, Mother ignores the first part of this quote which specifically provides that such agreements, made between a Mother and Father, are "legally ineffective to oust the jurisdiction of the court in a support action." The family court always has jurisdiction over the parties' support agreements, and since 1990, when

the Divorce Code was amended, the court has jurisdiction to modify a support agreement either upward or downward.

Mother's reliance on **Swartz v. Swartz**, 689 A.2d 302 (Pa. Super 1997), is equally inapposite. In **Swartz**, we held that a private separation and child support agreement was enforceable in equity. **Id**., at 305. The court reasoned that a "result to the contrary would serve to illegitimize future separation agreements and encourage a party to promise anything to obtain a divorce, knowing he or she would never be bound by the terms of the promise. **Id**. (*citing* **Brown v. Hall**, 435 A.2d 859 (Pa. 1981). Such a result would further shake the foundations of contract law and the sanctity of a bargain made between two parties at arms' length. **Id**.

This argument fails because, in this action, Mother is not seeking to enforce the parties 2009 Agreement in equity. Indeed, Mother informed this Court at oral argument, that she has a separate breach of contract claim pending before the trial court.

The court in **Swartz** noted the abundance of precedent in Pennsylvania establishing the proposition that private support agreements and court-determined support orders may exist simultaneously, stand apart and be enforced separately. **Id**. at 304-05. *See* **Soll v. Soll**, 632 A.2d 581, 584 (Pa. Super. 1993) (it is possible for support agreements and court orders to coexist, stand apart, and be enforced separately); **Lipschutz v. Lipschutz**, 571 A.2d 1046, 1052, (Pa. Super. 1990) *alloc. den.,* 527 Pa. 601, 589 A.2d

692 (Pa. 1990) (wife who obtained support order was not estopped from enforcing prior private settlement agreement regarding support); ***Andursky v. Andursky***, 554 A.2d 571, 573 (Pa. Super. 1989) (private agreements for support are governed by the law of contract and are enforceable in an action in assumpsit or equity by specific performance; private agreements and court-imposed orders are enforceable in distinct fashions and governed by distinguishing principles); ***Trumpp v. Trumpp***, 505 A.2d 601, 604 (Pa. Super. 1985) (wife can pursue equitable remedy of specific enforcement of the parties' private agreement even if intervening support order had been obtained in court); ***Guerin v. Guerin***, 442 A.2d 1112, 1113 (Pa. Super. 1982) (order of domestic relations judge reducing support obligation is not *res judicata* of issue of enforceability of private support agreement when private agreement has not been entered as a court order).

We make no ruling as to whether Mother will be successful in her breach of contract action, but we note that after the decision in ***Swartz***, courts have specifically severed the support portion of these settlement agreements, leaving the remainder of the agreement to be enforced at law or adjusted in equity by the trial court. *See*, e.g., ***Boullianne v. Russo***, 818 A.2d 577, 580 (Pa. Super. 2003).

Mother's second and third arguments regarding the Divorce Code and the rules of civil procedure also fail. To begin, we observe the standard set in by the Pennsylvania Supreme Court in the case of ***Nicholson v. Combs***, 703

A.2d 407 (Pa. 1997), where the Court recognized that for all marital settlement agreements following the enactment of 23 Pa. C.S.A. § 3105(b), the trial court has the power to modify the terms of the agreement with regard to child support upward or downward based on "changed circumstances."

Mother argues that this section does not apply to the parties in this case, because section 3105 is part of the Divorce Code and these parties were never married. We summarily reject that argument.

> Section 3105(a) pertains to matters under Part IV of Title 23; *it is PART V that addresses child support,* specifically Chapter 43. *See* 23 PA.C.S.A. §4321 (Liability for support); *see also* 23 Pa. C.S.A. §4321(3) ("Parents may be liable for the support of their children who are 18 years of age or older.") the legislature did not extend section 3105(a) of the Divorce Code to Part V of the Domestic Relations Code, *see* 23 Pa.C.S.A.§101, because parties' agreements pertaining to matters of child support or child custody *are always subject to court intervention. See **Sonder v. Sonder,*** 549 A.2d 155, 164-165; *see also* 23 Pa.C.S.A. § 3105(b) (provisions pertaining to custody, support or visitation are subject to modification by the court upon a showing of changed circumstances); 23 Pa.C.S.A. § 4352(continuing jurisdiction over support orders).

***Thomson v. Rose***, 698 A.2d 1321, 1323-1324 (Pa. Super. 1997)(emphasis original).

"In [a] support action…the payee may not claim that the [agreement] prevents the family court from modifying the order downward if such reduction is necessary to prevent payor from having to comply with an order that he cannot pay due to changed circumstances." ***Nicholson, v. Combs***, 703 A.2d 407, 417 (Pa. 1997). "Because failure to comply with a support order can lead to incarceration, the court must be able to reduce the amount if the payor establishes an inability to pay." ***Nicholson,*** 703 A.2d at 416-417.

Section 3105(b) applies to *all* agreements of support regardless of whether the parties were married. In fact, this Court has previously applied the **Nicholson** rule to unwed parents in **Boullianne v. Russo**, 819 A.2d 577 (Pa. Super. 2003). In **Boullianne,** the parties' private support agreement did not, *as a matter of law*, foreclose downward modification of that portion of the support order at some future date. **Boullianne**, 819 A.2d at 580. "Indeed, a family court's power to modify a support order downward is not precluded by the existence of an agreement upon which the support order is based." **Id.** There, as is the case here, the trial court did not err in concluding that the child support portion of the previous, private agreement was modifiable under section 3105(b).

Likewise, Pennsylvania Rule of Civil Procedure 1910.19 permits modification of a child support order if there is a material and substantial change in the calculation of a support obligation. Mother argues that the parties' agreement was not technically a "support order" and, even if it were, the 2009 Agreement did not consider the income of either party. Therefore, she claims, any change in the guideline calculation would not constitute a material change in circumstances that would warrant a modification in this case. We disagree.

This argument fails twice. For one, limiting support modification to only those support orders that are entered in a domestic relations docket would abrogate both the well-settled precedents discussed above, as well as our

interpretations of 23 Pa.C.S.A. §3105 ("Effect of agreements between parties") and §4325 ("Continuing jurisdiction over support orders"). Second, even if modification is only applicable to those support arrangements born of a court order, the parties' decision to set their 2009 Agreement on the record with a judge, had the effect of making the agreement a qualifying consent order of court.

Moreover, Father followed the terms of this order for seven years, before he again sought relief in family court, in 2016. Once he sought this relief, the trial court properly looked to the parties' incomes to determine the amount of child support Father should pay. As we noted above, because failure to comply with a support order can lead to incarceration, the trial court must be able to reduce the amount the obligor has to pay, if there is a change in the parties' circumstances. *See **Nicholson**,* 703 A.2d at 416-417. Here, the trial court properly noted a substantial change in the parties' circumstances and allowed for a modification of Father's child support obligation.

Mother's second argument on appeal is that the trial court erred by not requiring Father to prove a *material and substantial* change in circumstances to justify a modification of his child support obligation. Mother suggests that the trial court's phrasing ("clearly the circumstances have changed") is proof that the trial court misapplied the law. *See **Trial Court Opinion,*** 6/12/2017, at 7. We disagree.

While the change must be material and substantial to warrant a modification of support, there is no indication that the trial court misapplied this standard. The trial court need not use the magic words "material and substantial" in crafting its order. There is no doubt that Father's circumstances have changed dramatically since the parties entered the 2009 Agreement. As discussed below, there is ample evidence to support the trial court's finding that Father experienced a material and substantial change in circumstance.

In her third contention, Mother argues that the court erred when it found evidence of a change in circumstances warranting a downward modification of Father's child support obligation. She asserts that the only factor the court should have considered was whether Father was still playing in the NFL.

To limit the scope of the court's inquiry to Father's status in the NFL would ignore the key component of any child support obligation, namely, whether Father has the present ability to pay the child support amount. As we have explained, the trial court is charged with the inherent ability to modify a support obligation upon a substantial and material change in circumstance, regardless of a private agreement's provisions to the contrary. After all, if Father were to win the Powerball lottery, Mother would argue that the support amount should be increased due to a significant increase in Father's income, and the trial court should consider this fact. Conversely, the fact that Father is no longer in the NFL, and can no longer afford to pay $4,000 per month in

child support, given his current financial situation, should not preclude a downward modification, despite any acknowledgment that the 2009 Agreement was a full and final settlement of the claims between the parents.

But to Mother's exact point, the trial court recognized that the material change in circumstance was not that Father was no longer in the NFL, or that million-dollar NFL contracts were a thing of the past. Rather, the trial court noted that the change of circumstance was the drastic reduction of Father's *ex-player* income. Father's post-NFL career was as a celebrity spokesman. As his celebrity diminished with each year he was out of the league, so too did his speaking opportunities. The court noted that Father has unsuccessfully sought to utilize his football experience to enter the coaching profession. Father sought graphic design job opportunities in line with his college degree, even though he had been out of school over a decade and never worked in the field. Finally, the Court considered the fact that he has four other children with his spouse.

We have held that "advisory effect will be given to the agreement but without binding effect on the court when it is not in the best interests of the child." *See* **Thomson v. Rose**, 696 A.2d 1321, 1323 (Pa. Super. 1997)(*quoting* **Sonder v. Sonder**, 549 A.2d 155, 165 (Pa. Super. 1988). Likewise, the 2009 Agreement's provisions are only advisory here. Presumably, it was helpful to the trial court to know that Father adhered to the agreement after his NFL retirement; the court noted Father's fidelity to

the terms for the several years between his retirement and his petition for modification. But nowhere in our support jurisprudence do we allow the terms of a private agreement to be the harbingers of a change in circumstance.

Even if Father had shown a material and substantial change in income to modify the 2009 Agreement, as Mother claims in her fourth appellate issue, Father did not meet the burden necessary to relieve him from paying $4,000 per month in child support. Or to put her argument simply, he could afford it.

"The support guidelines were promulgated pursuant to the Act of October 30, 1985, as amended, 23 Pa.C.S.A. §4322, which provides that child and spousal support shall be awarded pursuant to statewide guidelines as established by general rule by the Supreme Court of Pennsylvania." *Ball v. Minnick*, 648 A.2d 1192, 1197 (Pa. 1994). This legislation provided that:

> The guideline[s] shall be based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support. In determining the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support, the guideline[s] shall place primary emphasis on the net incomes and earning capacities of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention.

23 Pa. C.S.A. §4322.

"The support guidelines are based on the principle embodied in the case law that the financial support of a child is a primary obligation of each parent. Since the child's needs receive priority, the support obligation consists of that portion of the parents' incomes that is reasonably available for child support."

- 13 -

*Ball,* 648 A.2d at 1197. "This approach is also mandated by 23 Pa.C.S.A. §4322 which provides for the reasonable needs of a child to be determined through the use of the guidelines that place primary emphasis on the net incomes and earning capacities of the parents." *Id.*

The most recent Explanatory Comment to Pa.R.C.P. 1910.16-1 ("Amount of Support. Support Guidelines.") explains that, in basic child support cases, the statutory support guidelines are to leave obligors with at least $931 per month after they make a support payment. This is called a "Self-Support Reserve," or "SSR." The SSR is "intended to assure that low-income obligors retain sufficient income to meet their own basic needs, as well as to maintain the incentive to continue employment." *Id.* It seems Mother would have us take $4,000 per month from Father so long as he retains $931. There is no legal authority for Mother's proposition.

In his effort to reinforce the trial court's determination, Father reasons that the 2009 Agreement would unfairly separate from him 41.5% of his monthly net income. The support guidelines do not operate as flat percentages of income; apart from the support schedule listed in Pa.R.C.P. 1910.16-3 and the support formula located in Rule 1910.16-4, there are other considerations when calculating support. The enumerated factors in Rule 1910.16-5 ("Deviation") account for variables such as the unusual fixed obligations of the household. The Rules account for still other adjustments in Rule 1910.16-6 and Rule 1910.16-7, including child care expenses, mortgage

payments, and the obligor's other children. Mother does not argue that the trial court's arithmetic was wrong. Instead, she argues that Father could still afford to pay $4,000 per month. But neither the Rules of Civil Procedure nor our jurisprudence command that obligor-parents must beg, borrow, or steal to satisfy a support obligation. As we have articulated above, the guiding principles are the *reasonableness* of the child's needs, and the extent of a parent's income that can be *reasonably* set aside to provide these needs. Thus, her fourth argument fails.

In her fifth argument, Mother maintains that a reduction of Father's child support obligation is not in the child's best interests. On this point, Mother conflates the purpose of child support with a distorted method of support calculation. "The duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests." **McClain v. McClain**, 872 A.2d 856, 860 (Pa.Super. 2005)(*quoting* **Depp v. Holland***,* 636 A.2d. 204, 206 (Pa. Super. 1994). "Child support is a shared responsibility; both parents must contribute to the support of their child in accordance with their relative incomes and ability to pay." **Depp**, 636 A.2d at 213 (*quoting* **DeWalt v. DeWalt**, 529 A.2d 508 (Pa. Super. 1987)).

We find that the subject child's best interests are promoted by this obligation, the calculation of which was achieved in accordance with the laws of this Commonwealth. Mother's prescribed "best interests" method of calculation would have us prohibit all reductions of obligations, thereby

usurping the legislature and completely eliminating Pa. R.C.P. 1910.19 ("Support. Modification. Termination. Guidelines as Substantial Change in Circumstances. Overpayments.")

Mother's argument that a child's best interests compel the maximum amount of support is a specious one. At first blush, it appears sound. Indeed, an identified statutory factor in deviating from the support guidelines is "the best interests of the child." *See* Pa.R.C.P. 1910.16-5(b)(9). But when following her argument's trajectory, Mother would have the law push every obligor-parent to the brink of incarceration and beyond. Surely Mother does not expect us to bypass the entirety of our child support laws by using the "best interests" deviation factor, per Rule 1910.16-5(b)(9). In support matters, the "best interests" standard measures the effects of the financial obligation as to the child, the parents and their relationships to each other. Mother's fifth argument fails.

In her sixth contention, Mother claims the trial court erred when it did not provide her an opportunity for a hearing on her claim for attorney's fees. Perhaps she submitted this argument on appeal in the event she was successful on her other contentions. However, because her other arguments failed, this argument also fails. She alleges two distinct bases for collecting attorney's fees. The first statutory basis is 42 PA.C.S. §2503 – specifically §2503(7) or alternatively, §2503(9). Section 2503(7) provides that a participant shall be entitled to a reasonable counsel fee "as a sanction against

another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter." Section 2503(9) similarly provides for this entitlement when "the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith."

Mother's second statutory basis for counsel fees is found in the Domestic Relation Code's 23 Pa.C.S.A. §4352(a), which provides: "If an obligee prevails in a proceeding to establish paternity or to obtain a support order, the court may assess against the obligor filing fees, reasonable attorney fees and…other reasonable costs and expenses…."

To be clear, Mother's position is not that trial court's denial of fees was against the weight of the evidence. Rather, she argues that it was an error to prevent her from even pursuing a fee claim. Mother is incorrect. Working backwards, 23 Pa.C.S.A. §4352(a) provides for relief in scenarios altogether different from the instant case. For one, Mother *did not* prevail in her arguments, and she did not prevail in a "proceeding to establish paternity or to obtain a support order." Additionally, Mother does not survive the factors to be considered when awarding fees under 23 Pa.C.S.A. §4352. We have stated in, e.g., **Suzanne D. v. Stephen W.**, 65 A.3d 965, 975 (Pa. Super. 2013): "Factors to be considered in awarding fees include whether (1) the conduct of the obligor impeded entry of a support order; (2) whether the obligor presented a reasonable defense; (3) whether the obligor failed to

support the child; and (4) whether the parties have disparate financial positions and needs." (Citation omitted).

The trial court did not have to provide Mother an opportunity to present facts on these considerations. They were already self-evident from the hearing and procedural disposition. At no time did Father impede the entry of a support order. At all times, he supported the child. Even as he experienced a substantial change in circumstance, and even as he pursued proper legal recourse to reduce his burden, he properly fulfilled his obligation to the child.

Mother relies on **Suzanne D.** as a perfect example of a situation where fees were granted after consideration of the totality of the circumstance, and critically, *despite* the reasonable conduct of both parties. This reliance is misplaced. For one, the obligee in that matter was the prevailing party where our Mother is not. **Id***.* Second, the **Suzanne D.** Court noted that the obligor-father, who was subsidized by his parents, incurred no personal obligation for his legal fees. **Id.**, 65 A.3d at 976. Unlike in **Suzanne D.**, the totality of the circumstances in the present matter favor Father. To find for Mother would be to wrongly interpret 23 Pa.C.S.A. §4352 to mean that an obligee will always be due fees for no other reason than earning less wages than the obligor, but we are not inclined to do this.

Shifting now to Mother's twin claims for attorney's fees under 42 PA.C.S. §2503, Mother contends that Father's petition to modify a non-modifiable

agreement is *per se* obdurate, vexatious, dilatory, or otherwise in bad faith. In fact, the opposite is true. Father's success in pursuing modification is the best proof that his actions were proper. Had Father been unsuccessful, then the question might be whether Father's actions were merely improper, or whether they sunk to the level of vexatious or in bad faith. In short, the trial court did not err when it denied Mother an opportunity to present evidence on the claim for attorney's fees.

In her final and apparent catchall contention, Mother submits that the trial court support modification was in err "based on the totality of the circumstances." But we do not reverse trial courts in matters of child support based on a vague totality-of-circumstances standard. As we stated above:

> An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

**K.J.P.,** 68 A.3d at 978. For the aforementioned reasons, we conclude that the trial court's judgement was manifestly reasonable and supported by the evidence.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/14/2018