**Kirsten E. McCLAIN, Appellee,**

v.

**Joseph M. McCLAIN, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 16, 2005.

Filed April 11, 2005.

Nichole M. Staley–O'Gorman, Harrisburg, for appellant.

Donna L. Brightbill, Lebanon, for appellee.

BEFORE: HUDOCK, KLEIN and BENDER, JJ.

OPINION BY BENDER, J.:

¶ 1 Joseph M. McClain (Father) appeals from the July 20, 2004 court order that dismissed his exceptions to a support master's determination and made permanent a temporary court order dated May 14, 2004, in which the court had adopted the master's decision. Consequently, Father's petition requesting a downward modification of child support for his and Kirsten E. McClain's (Mother) son was denied. Father contends that the trial court erroneously relied on an agreement executed in conjunction with the parties' Texas divorce decree to deny the downward modification. He also argues that Mother should have been assigned an earning capacity and that the court incorrectly determined that no material and substantial change in circumstances had occurred. We affirm.

¶ 2 In its opinion, the trial court introduced its discussion of the issues raised by Father by first setting forth the following:

The parties are the parents of Joseph Michael McClain, Jr., born September 22, 2001. At the time of the child's birth, the parties were residents of the state of Texas. The parties were divorced by Decree entered on June 12, 2002. As part of the negotiation between the parties regarding property issues and the divorce, the parties executed an Agreement Incident to Divorce on May 30, 2002. After further negotiations, and changes to the Agreement, the parties executed a second Agreement Incident to Divorce on June 11, 2002.

On or about October 11, 2003, Father filed a request in the Court of Common Pleas of Lebanon County to register the Texas Child Support Order and also filed a Petition to Modify the Order. On February 27, 2004, Father filed an Amended Petition to Modify the Child Support Order. The Texas Order was registered in Pennsylvania and the parties agreed to bypass the support conference and move directly to a support hearing before the Domestic Relations Master. The hearing was held before Domestic Relations Master Kristen Lee, Esquire on March 11, 2004. An Order of Court was issued on May 14, 2004 dismissing the Amended Petition.

Father filed exceptions to the May 14, 2004 Order, which this Court dismissed on July 20, 2004. Now, Father appeals this dismissal, arguing the Court erred as a matter of law and/or abused our discretion by not modifying the Child Support Order.

Trial Court Opinion (T.C.O.), 9/10/04, at 2–3.

¶ 3 Initially, we note that the support master indicated that "[t]he court has previously registered the subject order and after [a] hearing the master finds said order to be a valid and enforceable order,

thus it may be subject to modification in Pennsylvania." Master's decision, 5/7/04, § IX. Moreover, since the trial court essentially adopted the support master's findings and recommendation, we reproduce the master's decision here:

1. Joseph Michael McClain, Jr. was born on 9–22–01.

2. The parties were divorced on 6–12–02.

3. The parties entered into an Agreement Incident to Divorce on 6–11–02.

4. Said agreement set the amount of child support at $4000/mo. with an acknowledgment that this amount is in excess of the Texas guidelines and that [Father] was being awarded a disproportionate share of the parties' property in consideration for the child support.

5. At the time of the agreement, [Father] was employed [as a physician] for the U.S. Army only.

6. In 2002, [Father's] gross income was $139,360.

7. [Father] began working for Comp. Health and this increased his 2003 income to $228,214 (gross).

8. At the time of the hearing, [Father] had earned $20,000 in 2004 from his supplemental employment at Comp. Health.

9. [Father] testified that he believes that he may not be able to continue his supplemental employment.

10. At the time of divorce, [Mother] was not employed.

11. In 2003, [Mother] had income of $4,625 earned as a self-employed graphic designer.

12. [Father] believes that he may be deployed to Iraq in the near future and that he would not receive much notice before said deployment.

13. However, [Father] has not been informed when he will be deployed. In fact, [Father] has not received any formal information that he will be deployed (i.e.: [Father] has not received any written information or formal orders of any kind).

Based on the foregoing, [Father's] Amended Petition will be dismissed. [Father's] deployment to Iraq is not certain. Additionally, [Father's] income has increased substantially since the date of divorce and agreement. The decrease of income described in the Petition, if it occurs would return [Father] to the same level of income he had at the time child support was agreed to by the parties. [Father] also requested modification based on the fact that [Mother] is now working. [Mother] earned less than $5000[.00] in 2003. This slight increase in income is not sufficient to require modification, especially when viewed in light of [Father's] increased income since the divorce. Therefore, the Amended Petition will be dismissed.

Master's decision, 5/7/04.

¶ 4 As noted above, Father now appeals from the trial court's order that dismissed his exceptions to the support master's decision. In his appeal to this Court, Father raises the following issues for our review:

A. Did the court err in receiving testimony and other evidence concerning the parties' Agreement Incident to Divorce executed in conjunction with their Texas divorce action, and in relying upon that contract as a basis for denying the relief requested by [Father]?

B. Did the court err in finding that there has not been a material and substantial change in circumstances since the entry of the original order?

C. Did the court err in failing to assign an earning capacity to [Mother] consistent with her education, prior work experience and earnings?

Father's brief at 10.

¶ 5 This Court in *Samii v. Samii*, 847 A.2d 691 (Pa.Super.2004), provides the following to guide us in our review of an order of support:

> "When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground." *Calabrese v. Calabrese*, 452 Pa.Super. 497, 682 A.2d 393, 395 (1996). We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. *Id.* An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. *Depp v. Holland*, 431 Pa.Super. 209, 636 A.2d 204, 205–06 (1994). *See also Funk v. Funk*, 376 Pa.Super. 76, 545 A.2d 326, 329 (1988). In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests. *Depp*, 636 A.2d at 206.

*Id.* at 694 (quoting *Laws v. Laws*, 758 A.2d 1226, 1228 (Pa.Super.2000)).

¶ 6 Father's first issue concerns the trial court's admission of and reliance on the Agreement Incident to Divorce (Agreement) rather than just its interpretation of the support provisions in the Texas Divorce Decree (Decree), which Father registered in Pennsylvania. Father asserts that the two documents are separate and distinct and that his request for modification solely referenced the Decree and not the Agreement. Although Father acknowledges that the Decree is modifiable upon a showing of a change in circumstances, he contends that the Agreement is a contract and that any issues concerning the Agreement should be addressed in the litigation Father has commenced in Texas to set aside the Agreement. Father also contends that "Pennsylvania lacks the requisite personal jurisdiction over Father to interpret or enforce the contract." Father's brief at 14. Additionally, Father asserts that Mother secured his consent to the Agreement through fraud and duress by threatening to report an extramarital affair that would have resulted in his court martial. Lastly, with reliance on *Nicholson v. Combs*, 550 Pa. 23, 703 A.2d 407 (1997), Father argues that "courts are not empowered to give contractual support obligations the weight of ordered ones." Father's brief at 17. Succinctly, Father's argument rests on the premise that, since the Agreement is a contract, not a court order, and can only be enforced in a separate civil action, the trial court here erred in accepting testimony about the Agreement and relying on its language to deny his request to modify the amount of support he was obligated to pay regardless of the change in circumstances.

¶ 7 We first note that it was Father who registered the Decree in Pennsylvania. The Decree, which is titled "Agreed Final Decree of Divorce," contains a child support provision that provides:

*Child Support*

> IT IS ORDERED that Joseph M. McClain is obligated to pay and shall pay to Kirsten E. McClain child support of $4000.00 per month, with the first payment being due and payable on July 1, 2002 and a like payment being due and payable on the first day of each month thereafter until September 1,

2008, on which date IT IS ORDERED that Joseph M. McClain is obligated to pay Kirsten E. McClain child support of $6000.00 per month, with a like payment being due and payable on the first day of each month thereafter until the first month following the date of the earliest occurrence of one of the events specified below:

1. The child reaches the age of eighteen years, provided that, if the child is fully enrolled in an accredited secondary school in a program leading toward a high school diploma or enrolled in courses for joint high school and junior college credit pursuant to Section 130.008 of the Texas Education Code, the periodic child support payments shall continue to be due and paid until the end of the month in which the child graduates from high school;

2. the child marries;

3. the child dies;

4. the child's disabilities are otherwise removed for general purposes; or

5. **further order modifying this child support.**

A child support obligation does not terminate on the death of the obligee but continues as an obligation to the child named in the support order.

Decree, 6/12/02, at 22–23 (emphasis added). Additionally, the Decree contains the following pertinent provision:

5. *Agreement of Parties*

The Court finds that the parties have entered into an Agreement Incident to Divorce, in a document separate from this Final Decree of Divorce. The Court approves the agreement and incorporates it by reference as part of this decree as if it were recited herein verbatim and orders the parties to do all things necessary to effectuate the agreement. A copy of the agreement is attached to this decree, and thereby filed with the records of this Court. The agreement addresses specific issues, but does not contain the entire agreement of the parties. This decree of divorce is entered by agreement, and the terms of the decree are also contractual to the extent permitted by law. The entire agreement of the parties is contained within the combined Agreement Incident to Divorce and this Decree of Divorce.

*Id.* at 2 (emphasis added).

¶ 8 The Agreement Incident to Divorce, which is referenced above in the Decree and is incorporated into the Decree, also contains a child support provision that provides:

1.4 Child Support

Child Support will be set at $4000.00 per month from July 1, 2002 until Joseph M. McClain retires from United States military service, after which child support will increase to $6000.00 per month until one of the usual terminating factors [occurs]. The parties understand and acknowledge that child support as agreed is in excess of Texas guidelines, but are agreeing to this amount to provide for the best interests of the child. The parties are further awarding Joseph M. McClain a disproportionate share of the parties' property in consideration for the child support described.

Agreement, 6/11/02, at 3. The Agreement also contains the following provision:

*4.6 Entire Agreement*

This Agreement Incident to Divorce supersedes all other agreements, either oral or in writing, between the parties relating to the rights and liabilities arising out of their marriage. **This Agreement Incident to Divorce, along with the agreement contained within the terms of the Decree of**

Divorce, contain the entire agreement of the parties. Any reference herein to "the agreement," or to "this agreement" is a reference to the combined "Agreement Incident to Divorce" and "Decree of Divorce."

*Id.* at 8 (emphasis added). Additionally, the Agreement provides that "[t]o the extent permitted by law, the parties stipulate that this agreement is enforceable as a contract." Agreement, 6/11/02, at 1 (emphasis added).

¶ 9 It is apparent that the language in the Decree allows for modification of the amount of child support, while the language in the Agreement is silent as to that issue. However, both documents include language expressing the parties' intentions that the two documents be considered as one, *i.e.,* the Agreement is incorporated into the Decree. Conversely, neither document employs any merger language.

¶ 10 This Court's opinion in *Jones v. Jones,* 438 Pa.Super. 26, 651 A.2d 157 (1994), provides insight into whether the documents at issue have or have not merged. That determination controls whether the Agreement survives as an independent contract as Father contends. The *Jones* decision indicates that an agreement that does not merge with a decree cannot be modified by a court. Rather it

is an enforceable contract and is governed by contract law. *Id.* However,

If a support agreement merges into a divorce decree, ... the agreement take[s] on all of the attributes of support [o]rders for purposes of modification and enforcement. The key to analyzing questions of merger and modifiability is to ascertain whether or not a merger was intended by the parties. The starting point for determining the intent of the parties is the language and terms of the agreement itself. If the language is clear and unambiguous, this court need only examine the writing itself to give effect to the parties' understanding.

*Id.* at 158–59 (citations and quotation marks omitted). *See also* 23 Pa.C.S. § 3105 (stating that an agreement providing for child support, visitation or custody, regardless of whether it has merged or been incorporated into the decree, "shall be subject to modification by the court upon a showing of changed circumstances").

¶ 11 Having reviewed the language of the documents at issue and the testimony given by the parties, we initially conclude that it was proper for the court to consider both the Decree and the Agreement in determining whether Father's petition should be granted.[1] Since these doc-

---

1. To support his position concerning his first issue, Father offers arguments dealing with personal jurisdiction and fraud. We address those two contentions below.

With regard to Father's assertion that Pennsylvania courts do not have personal jurisdiction over him pursuant to 23 Pa.C.S. § 7314, a provision of the Uniform Interstate Family Support Act, we find that Father has misconstrued the position in which he has placed himself when he registered the Decree and filed the support modification petition in Pennsylvania. It is apparent under section 7314 that a Pennsylvania court would not have jurisdiction over Father in some other

proceeding, but clearly Father submitted to the jurisdiction of the court in this support proceeding.

In addition, we note that Father's assertions that his consent to the Agreement was procured by fraud and duress were found to be incredible by the trial court. The court cited the parties' testimony and an affidavit from Father's roommate and concluded that Father's accusations were without merit. The court particularly noted that Father paid the attorney who prepared the Agreement, requested several changes to the Agreement, and that "it was Father himself who came up with the amount of $4000 per month in child

uments are at the heart of the controversy, it would be illogical to have the court consider a petition requesting a modification of child support based upon an alleged change in circumstances without the ability to examine the basis for the existing support order.

¶ 12 Additionally, we recognize that both documents reference the parties' assent to the melding of the Decree and the Agreement as containing the entire settlement of the parties' rights and obligations incident to their divorce, including child support issues. Despite the one sentence in the Agreement referencing the application of contract law, we conclude that that sentence does not override the other provisions and that the court did not abuse its discretion when it relied on both documents to make its determination.

 ¶ 13 Finally though, we are at a loss to understand Father's emphasis on the court's reliance on the Agreement in the present action. Whether or not the Decree and the Agreement merge is of no moment to the decision here, since the Decree itself is a court order that establishes the $4000 child support obligation, a sum to which Father had acquiesced. The Decree also provides for a court ordered modification. Moreover, as noted above, 23 Pa.C.S. § 3105 provides for court modification of support provisions in agreements. Father's problem in actuality stems from his inability to meet his burden of proof.

When modification of a child support order is sought, the moving party has the burden of proving by competent evidence that a material and substantial change of circumstances has occurred

since the entry of the original or modified order. The lower court must consider all pertinent circumstances and base its decision upon facts appearing in the record which indicate that the moving party did or did not meet the burden of proof as to changed conditions.

*Samii,* 847 A.2d at 695 (quoting *Commonwealth ex rel. Sladek v. Sladek,* 386 Pa.Super. 490, 563 A.2d 172, 173 (1989)).

 ¶ 14 To support his argument that circumstances have changed, making it impossible for him to pay the present support order, Father relies on increases in his living expenses due to his remarriage, the birth of a new child, and his inability to retain his secondary employment with CompHealth. Citing *Haselrig v. Haselrig,* 840 A.2d 338 (Pa.Super.2003), Father contends that the court is required to examine the realistic earnings of the parties and cannot expect him to continue to work his second job. He also asserts that he very likely will be deployed to Iraq at any time.

¶ 15 Father fails to recognize that the support master and the court considered the testimony and evidence that he submitted to support these changes. However, as stated by the master, even if Father's income would decrease because he would discontinue his second job, his level of income would revert to the same amount he earned at the time he entered into the agreed upon Decree. Thus, both the master and the court concluded that no change in circumstances that would allow for a lowering of the amount of support was evident, noting particularly that Father had not suffered a substantial, involuntary decrease in employment income. Again, based upon the record, we are constrained

support." T.C.O. at 6. The court clearly indicated that it found Mother's testimony "far more credible than Father's testimony." *Id.* Since "[t]he fact-finder is entitled to weigh the evidence presented and assess its

credibility," *Green v. Green,* 783 A.2d 788, 790 (Pa.Super.2001), we conclude that the trial court did not abuse its discretion in finding that Father's consent was not obtained through fraud or duress.

to conclude that the court did not abuse its discretion by denying Father's petition. Father simply failed to prove a change in circumstances.

¶ 16 Father's last issue concerns the court's refusal to assign an earning capacity to Mother. As previously noted, at the time the Decree was entered into by the parties, Mother had no earnings. In 2003, she earned $4,625 as a self-employed graphic designer. The support master found and the court agreed that the slight increase was an insufficient amount requiring modification, especially in light of the fact that Father had a substantial increase in income following the issuance of the Decree.

¶ 17 Father cites Mother's testimony wherein she acknowledges that she has a bachelor's degree in communications and earned about $30,000 per year prior to the birth of the parties' son. However, Father fails to mention Mother's testimony wherein she stated that the parties had agreed that Mother would become a stay-at-home-mom following the birth of their son. Father also makes no mention of the fact that Mother is working part time from her home so that she can care for the child. Although we recognize that "[t]he determination of a parent's ability to provide child support is based upon the parent's earning capacity rather than the parent's actual earnings," *Samii*, 847 A.2d at 696 (quoting *Laws*, 758 A.2d at 1229), a court may make "an exception to the rule whenever a parent chooses to stay at home with a minor child." *Singleton v. Waties,* 420 Pa.Super. 184, 616 A.2d 644, 647 (1992). *See also Samii, supra.; Frankenfield v. Feeser,* 449 Pa.Super. 47, 672 A.2d 1347 (1996). We have found no evidence in the record that contradicts Mother's testimony that she is working part-time at home while she cares for the parties' child. Accordingly, we conclude that the trial

court did not abuse its discretion by affirming the support master's decision to refuse "to assign a higher earning capacity to Mother...." T.C.O. at 7.

¶ 18 For the foregoing reasons, we affirm the trial court's order denying Father's petition to modify his child support obligation.

¶ 19 Order affirmed.