J-S65030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| Stacy C. Cramer, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| Daniel A. Cramer | : | No. 1071 MDA 2019 |

Appeal from the Order Entered, May 30, 2019,
in the Court of Common Pleas of Lebanon County,
Domestic Relations at No(s):  2014-5-0491.

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED JANUARY 31, 2020**

In this matter, Stacy Cramer (Mother) appeals the trial court order setting forth the amount of child support owed to her by Daniel Cramer (Father).  Mother's principal argument is that the court miscalculated the award by deducting certain business expenses from Father's income.  After careful review, we affirm.

The relevant factual and procedural history is as follows:

The parties are the divorced parents of three children.  Father is obligated to pay for the support of the two minor children, as the eldest child has graduated high school and reached the age of majority.  The impetus for the instant appeal stemmed from a support review hearing held before a domestic relations master in February 2019.  Father is self-employed.  He's

_____

[*] Retired Senior Judge assigned to the Superior Court.

the sole owner and operator of a limited liability company (LLC) that services lightly damaged vehicles, primarily working for companies that maintain used car lots or fleets of trucks. At the time of the master's hearing, Mother was unemployed, having been laid off from a job as a bank teller.

The master determined that Father's business grossed $114,276 in 2018, that the salary he paid himself for that year was $54,794 and that his net business income was $30,419.47. The master further concluded that Father's monthly net income for purposes of child support was $4,788.93. This figure included a deduction of $1,000 in alimony that Father pays per month to Mother. The master recommended that Father pay Mother $1,137.93 per month for the support of the two minor children.

Mother filed exceptions before the trial court. *See* Pa.R.C.P. 1910.12. Her primary contention was that the master erroneously excluded Father's travel and meal expenses when calculating Father's income. The trial court granted this exception in part. While the trial court deemed some of these expenses were legitimate, the court also ruled that some expenses were inflated above Father's actual out-of-pocket costs.

The court did not clarify which individual expenses were inflated, nor did the court remand for the master to recalculate Father's income. Instead, the trial court explained that the net difference in the ultimate child support obligation, when excluding versus including all of Father's business expenses, was approximately $250 per month. After reasoning that at least some the deductions were proper, and that a remand to the master for exact

determinations would not be worth the cost to the parties, the trial court essentially split the difference and increased Father's support obligation by about $100 to $1,235 per month.

Mother timely filed this appeal, wherein she presents four issues:

1. Whether the trial court committed an error of law and/or abused its discretion in failing to properly calculate Father's income for support purposes, despite noting errors that were made by the [domestic relations master], as it relates to deductions from Father's income for purposes of the [domestic relations master's] calculation of Father's income for support purposes[?]

2. Whether the trial court committed an error of law and/or abused its discretion in failing to add back all of Father's deductions for meals/entertainment and vehicle/mileage expense to his income for support purposes, which should have resulted in a recalculation of Father's income for support purposes[?]

3. Whether the trial court committed an error of law and/or abused its discretion in failing to add any amount to Father's income for support purposes, as it relates to his additional income he receives from plowing snow, despite the acknowledgement from Father that he receives this additional income, and the fact that Father's claimed monthly expenses exceeded his claimed income by approximately $700 per month[?]

4. Whether the trial court committed an error of law and/or abused its discretion in failing to remand this case to the [domestic relations master] in order to determine the actual amount of profit that Father received from his business in 2018, which would have been reflected on his 2018 tax returns, as opposed to using the amount set forth for profit on Father's year-end profit and loss statement, as the evidence of record in this matter for 2017 demonstrated that the

amount of profit set forth on Father's 2017 tax return was higher than the amount set forth on his year-end profit and loss statement for 2017[?]

Mother's Brief at 10 (some capitalization omitted).

While Mother presents several issues, many aspects are related. We shall address the related claims together for ease of disposition. The first two issues pertain to whether the master and trial court improperly calculated Father's income by allowing improper business expenses. The third claim involves income Father earned from plowing snow, as well as the accuracy of one of his exhibits. The fourth and final claim concerns whether the court erred by not remanding the case to the master to consider Father's 2018 tax return, which was not finalized and thus not available at the time of the master hearing.

Our well-settled standard of review in a child support case provides:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

**Silver v. Pinskey**, 981 A.2d 284, 291 (Pa.Super.2009) (*en banc*) (citation omitted).

In addressing child support issues, this court has stated the following:

Child and spousal support "shall be awarded pursuant to statewide guidelines." 23 Pa.C.S. § 4322(a). In determining the ability of an obligor to provide support, the guidelines "place primary emphasis on the net incomes and earning capacities of the parties[.]" 23 Pa.C.S. § 4322(a). *See also* **Woskob v. Woskob**, 843 A.2d 1247, 1251 (Pa. Super. 2004) (finding that "a person's support obligation is determined primarily by the parties' actual financial resources and their earning capacity").

**Mackay v. Mackay**, 984 A.2d 529, 537 (Pa. Super. 2009), *appeal denied*, 995 A.2d 354 (Pa. 2010).

In other words, when determining a husband-father's financial obligation to his wife and children, "a court must make a thorough appraisal of the husband-father's actual earnings and perquisites, and the true nature and extent of his property and financial resources." **Labar v. Labar**, 731 A.2d 1252, 1254 (Pa. 1999).  A party cannot voluntarily reduce his earnings in an attempt to circumvent a child support obligation. **Grigoruk v. Grigoruk**, 912 A.2d 311, 313 (Pa. Super. 2006).

As Father here is self-employed, the domestic relations master and trial court were required to calculate Father's net income from his business.  When determining income in a support matter, the Pennsylvania Rules of Civil Procedures provide the following:

**Rule 1910.16–2. Support Guidelines. Calculation of Net Income**

Generally, the amount of support to be awarded is based upon the parties' monthly net income.

> **(a) Monthly Gross Income.** Monthly gross income is ordinarily based upon at least a six-month average of all of a party's income. The term "income" is defined by the support law, 23 Pa.C.S.A. § 4302, and includes income from any source. The statute lists many types of income including, but not limited to:
>
> (1) wages, salaries, bonuses, fees and commissions;
>
> (2) net income from business or dealings in property[.]

Pa.R.C.P.1910.16–2(a)(1)-(2).

"[U]nreimbursed business expenses may be deducted in determining monthly gross income if the expenses constitute *bona fide* expenses." **Berry v. Berry**, 898 A.2d 1100, 1107 (Pa.Super.2006), *appeal denied*, 918 A.2d 741 (Pa. 2007), and *appeal denied* 918 A.2d 741 (Pa. 2007).

Instantly, the master accepted Father's evidence that he incurred $14,276.22 in travel expenses, as he traveled throughout several counties in the Commonwealth tending to his clients. Father stated that he calculated this figure by using the standard IRS mileage guideline. The master further accepted that Husband expended $4,074.23 in meals that Husband shared with clients. These expenditures constituted annual figures.

Upon its review of Mother's exceptions, the trial court agreed with Mother, in part, as the court expressed in its Rule 1925(a) opinion:

> With respect to Father's meal and travel expenses, [the court] disagreed with the [master's] decision that the entirety of Father's claimed expenses should be deducted from his revenue for purposes of determining income available for support. In [its] court order, [the trial court] agreed with the [master] that Father should be able to legitimately deduct some meal and travel expenses because said expenses were necessary due to the nature of Father's

- 6 -

business.  However, [the court] looked at the numbers and [it] concluded that Father's business expense claims were in fact inflated.

In [its] court order, [the trial court] expressly rejected the option of remanding the case to the [master] for further analysis of Father's business expenses.  [The court] looked at what would occur if we were to adopt the totality of Mother's position, thereby including all of Father's claimed expenses as part of his income available for support.  [The trial court's] calculations revealed that if we were to eliminate all of Father's claimed expenses, the net effect would be an ongoing child support obligation of $1,385.  This was only $250 more than the [master] recommended.  Given our conclusion that some, but not all, of Father's claimed business expenses were legitimate, we quickly came to the conclusion that a correct support amount would rest somewhere between Mother's request of $1,385 per month and the [master's] determination of $1,137.93 per month.

Trial Court Opinion (T.C.O.), 7/11/2019, at 9.

We begin our discussion with Mother's first two issues.  On appeal, Mother renews her argument that none of the business expenses should have been deducted from Father's income.  **See** Mother's Brief at 19.  Mother is partially correct.

That the Tax Code provides various opportunities for deductions and expenses in order to offset income does not mean that such deductions apply in the context of child support.  Indeed, both this Court and our Supreme Court have been very clear on that fact.

When determining a support obligor's disposable income, it is the cash flow that ought to be considered and not federally taxed income, which often represents a fictional financial picture of a party's available funds.  **See Labar**,

*supra*, 731 A.2d 1252, 1257 (Pa. 1999) (citing ***Commonwealth ex rel. Hagerty v. Eyster***, 429 A.2d 665, 669 (Pa. Super. 1981)); ***see also Cunningham v. Cunningham***, 548 A.2d 611, 613, *alloc. denied*, 559 A.2d 37 (Pa. 1989).

The issue of whether a deduction/loss is a valid reduction of support income typically arises in cases like the instant matter, where the obligor is self-employed or earns income through a closely-held corporation. We are not without guidance:

> We have held repeatedly that deductions or losses reflected on corporate books or individual tax returns are irrelevant to the calculation of available income unless they reflect an actual reduction in available cash. For example, in ***Heisey v. Heisey***, 633 A.2d 211, 212 (Pa. Super. 1993), we considered the calculation of the income of a sole owner of an incorporated insurance business. We held that the trial court had erred in deducting from income "a 'loss' shown on the corporate federal income tax return that has no relevance in determining actual cash available for support." ***Id***. *Accord* ***McAuliffe v. McAuliffe***, 613 A.2d 20, 22 (Pa. Super. 1992) ("Depreciation and depletion expenses that are allowed under federal income tax law will not automatically be deducted from gross income for the purpose of determining support responsibilities."); ***Flory v. Flory***, 527 A.2d 155, 157 (Pa. Super. 1987) (trial court erred by calculating [h]usband's income based on income reported on tax return alone; "federal income tax law permits deductions that may not reduce a parent's disposable income"). We have held as well that all benefits flowing from corporate ownership must be considered in determining income available to calculate a support obligation.

***Fennell v. Fennell***, 753 A.2d 866, 868–869 (Pa. Super. 2000).

Put simply, a *bona fide* reduction in cash flow will constitute a valid deduction in income for the purposes of child support calculation, but a mere reduction of tax liability will not. Here, Father's business expenses represent **both** a legitimate reduction of cash flow **and** a mere reduction of tax liability.

To explain: Father acknowledged that his travel expense, totaling $14,276.22, was based on the IRS-approved standard mileage rate deduction for 2018 (54.5 cents per mile). While Father certainly incurred out-of-pocket costs, the total figure did not necessarily reflect a total dollar-for-dollar expense. Thus, some portion of this travel expense figure represented an actual reduction in Father's cash flow; but some other portion of this figure represented a mere reduction of Father's tax liability. The master was tasked with the difficult job of deciphering the two. Therefore, the master erred by excluding the entire travel expense from Father's income.

On exceptions, the trial court caught this mistake, characterizing the total expense as an "inflation" of the actual travel costs. The court explained:

> Father's claimed vehicle expense of $14,276 represents approximately $280 per week. That amount is far more than a small business owner would need to maintain one vehicle for business use. Assuming Father's truck gets 15 miles per gallon and gasoline costs an average of $3.00 per gallon, Father could purchase enough gas to drive 1,400 miles each and every week. […] Moreover, if there were expensive vehicle repairs that were needed during 2018, we are sure that Father would have described the needed repairs and provided documentation to corroborate the amount expended. He did not. Instead, Father candidly acknowledged that his vehicle expense as claimed was based upon mileage allowance amounts permitted by the Internal Revenue Service for tax purposes.

T.C.O. at 14.

Although the court noted that the master included unallowable expenses, the court did not determine the extent of the inflation, nor did the court remand for the master to find out.

Regarding the meal expense, Father testified that the total figure ($4,074) only represents the meals where he entertained clients, but it was unclear whether the expense covered the both his and the client's meals or just 50% of the meals' cost. In other words, the record is unclear as to whether Father calculated the meal expense by using an IRS deduction guideline or whether they represented true out-of-pocket expenses spent only on the clients' meals.

In any event, the trial court determined that the total meal expense was also inflated, surmising that even if Father expended one meal per business day per year, the daily expense amounts to $16. *Id.* at 15. "Even if one assumes Father expended that amount each and every day – and [the court] finds that assumption to be highly unlikely – at least some of the funds expended would have been for Father himself."[1] *Id.* But again, the trial court did not specify the extent of the inflation, nor did the court remand for the master to recalculate.

_____

[1] Father freely admitted that he did not take a client to lunch every day. *See* N.T., 2/21/2019, at 30.

In its Rule 1925(a) opinion, the trial court was forthright about why it did not remand to determine which expenses were legitimate and which were inflated:

> Once [the court] determined that the parties were essentially fighting over $250 per month, [the court] then analyzed whether [it] should remand this case to the [master] for another hearing to determine exactly how much of Father's claimed travel and meals expenses were legitimate versus inflated. We did not do so for two reasons:
>
> 1. This case had been lingering for too long without a final support order. For a multitude of reasons, including the litigiousness of the parties and our decision to grant leave for discovery to be conducted, the support order recommended by the [master] already had to be effective one year prior to the date of [the] order. Orders retroactive by one year or more are problematic because retroactive orders require recalculation of support and that frequently results in arrearages or credits that are difficult to administer and can create cash flow problems for the parties. Simply stated, [the court] wanted to avoid additional delay that would be necessitated by a remand to the [master].
>
> 2. The amount in controversy simply did not justify the time, effort and expense of a remand hearing. [The court does] not know the hourly rate of both attorneys involved in this case, but we are aware of no Lebanon County lawyers that charge less than $150 per hour. Even using that conservative amount, the parties would collectively pay $300 per hour for hearing preparation and litigation. If counsel expended only five hours each, that would equate to $1,500 in counsel fees simply to argue about Father's claimed business expenses. Given that [the court] knew that [it] would end up with a support amount separated by less than $200 per month from the parties' polarized positions, we concluded that a remand would simply not be cost effective.[FN]

> Footnote: [the court was] also very much aware that this support case will be re-evaluated on almost an annual basis given the fluctuation of Father's business income.
>
> Having rejected remand as an option, we determined viscerally that a little less than one-half of Father's claimed business expenses should be added back to Father's income for purposes of calculating his support obligation. With this visceral conclusion having been rendered, we simply added $100 per month to Father's support obligation.
>
> [The court] freely acknowledge[s] that [its] decision represented an educated estimate of what Father should be required to pay. [The court] also freely acknowledge[s] that [its] imprecision is estimating Father's legitimate business expenses may be sub-optimal. However, [the court's] motives for employing an educated estimate instead of precision were pure, [its] decision to estimate instead of remand was a conscious decision, and [the court] stand[s] by our decision.

T.C.O. at 16-17.

This Court appreciates the trial court's honest account of its reasoning. In reviewing whether a trial court abused its broad discretion, we have explained that:

> the term 'discretion' imports the exercise of judgment, wisdom, and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions.

*See Commonwealth v. Goldman*, 70 A.3d 874, 878-879 (Pa. Super. 2013) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000)).

- 12 -

Here, we conclude that the trial court recognized the master's mistake and adjusted the support obligation by exercising appropriate judgment, wisdom, and skill, all while staying within the framework of the law. Mother does not disagree with the court's arithmetic when it identified the $250 range between the parties' positions. From here, the court limited its room for error by increasing Father's obligation by another $100. Although the court conceded that the increase was an educated estimate, we cannot say that the calculation was arbitrary. Given the context, such a decision was still supported by the record. Testimony revealed that Father relied on the IRS deduction guideline, but that he also experienced a *bona fide* reduction of his cash flow. At best, the court's ultimate award was the exact and precise figure. At worst, the court was approximately $100 off. The court's decision was not manifestly unreasonable.

After all, litigation on this matter had become protracted. The court had already resorted to a three-tier support obligation, presumably to account for retroactivity and Mother's varying income as a bank teller, her severance income, and her unemployment compensation. The case was also before the master as a review of a prior support order; the parties have engaged in regular support litigation, several times a year, since 2014. Because Father had lost clients from 2017 to 2018, his gross revenue dropped by over $20,000. This is to say that the court reasonably assumed such fluctuations will cause the parties' regular support litigation to continue.

Of course, the trial court's second enumerated reason behind its decision leaves us some pause; a judge cannot lock the courthouse doors merely because he or she deems the available relief to be not worth the litigants' expense. But even on this point, we understand the court's motivation was not to chastise the litigants but remind them that the purpose of child support was to promote the children's best interests. **See Silver**, **supra**, 981 A.2d at 291; **see also** T.C.O. at 19.

We turn now to Mother's third issue, where her contentions are twofold. First, she claims that the court erred by not considering the proceeds Father received from plowing snow. Father testified that he plowed snow several times during the winter months in 2018. The total gross revenue from this opportunity was $350, or $29.17 per month, before expenses or taxes. While the trial court erred by not including this income in its support calculations, we agree with Father that the effective impact this amount would have on his support obligation would be *de minimis.* Thus, we conclude that the error is harmless.

Second, Mother claims that Father's income and expense statement (entered as Exhibit 10) indicated that Father's expenses exceed his net income by approximately $700. Mother concludes that the exhibit constitutes evidence that Father understated his income. **See** Mother's Brief at 22. Father responds by reminding this Court that a child support obligation is determined not by expenditures, but by income. **See** Father's Brief at 8; **see also** Pa.R.C.P. 1910.16-2. We understand Mother's point, but ultimately what

she presents to us is a credibility argument: that Father must have been able to afford these expenditures and thus evidence of his income was not believable.

In determining a child support obligation, the trier of fact is entitled to weigh the evidence presented and assess its credibility. *McClain v. McClain*, 872 A.2d 856, 862 n.1 (Pa. Super. 2005). Here, the support master found credible Father's evidence and testimony. As a reviewing court, we may not disturb these credibility determinations. *Doherty v. Doherty*, 859 A.2d 811, 812 (Pa. Super. 2004).

We turn now to Mother's fourth and final contention. She claims that the court should have considered Father's 2018 income tax return when calculating his income. At the time of the master's hearing in February 2019, Father's 2018 tax return was not yet completed and thus not a part of the record. Instead, Father provided, among other evidence, a 2018 profit and loss statement. Mother argues similar profit and loss statement from 2017 showed less income than what Father ultimately reported on his 2017 tax return. The inference is that Father's 2018 profit and loss statement was similarly inaccurate, and that Father's 2018 tax return would show more income. Mother concludes that the court should have remanded to the master to allow for consideration of the 2018 tax return.

We disagree. As Father points out, Mother did not request to keep the record open to allow for the completion of the return. More importantly, even if the master had the tax return, the issue is again one of weight and

credibility. As stated above, those matters rest within the province of the trier of fact. ***See McClain***, ***supra***; ***and see Doherty, supra***.

For the aforementioned reasons, we conclude that the trial court's child support award did not constitute an abuse of discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/31/2020